THE BOARD OF COMMISSIONERS OF FRANKLIN COUNTY
v. THE CITY OF OTTAWA.

COURT-HOUSE — *Improvement of Street in Front of — Liability of County.*
A city of the second class has the power to levy a special assessment for the improvement of a street in front of a court-house square within a city, without the consent of the board of county commissioners, and if the claim for such improvement is disallowed by the board, the district court, upon appeal, may adjust the amount thereof, and such a judgment may be paid as other judgments against a county.

*Error from Franklin District Court.*

PROCEEDING by the *City* against the *County Board* to collect a claim for the impro̤vement of a street in front of a

court-house square. The district court allowed the claim. The defendant *Board* comes to this court. The material facts are stated in the opinion.

*F. A. Waddle,* county attorney, and *John W. Deford,* for plaintiff in error:

1. The main question is this, Had the city of Ottawa the power to levy a special assessment of $573.10 for the improvement of Main street in front of "court-house square," on Franklin county, without the consent of the board of county commissioners, and then collect it by a general personal judgment against the county? The "court-house square" is not taxable property (Const., art. 11, §1); hence, it is not subject to this special tax. It is only taxable property that can be so assessed. *Durkee v. Comm'rs of Greenwood Co.,* 29 Kas. 697.

2. Paragraph 790, Gen. Stat. of 1889, requires such assessments "to be placed on the tax-roll for collection, subject to the same penalties and collected in the same manner as other taxes under existing laws." Paragraphs 6954 to 6975, Gen. Stat. of 1889, regulate the sale of land for unpaid taxes thereon in all other cases. Therefore, if the county should not pay this $573.10, her own treasurer, according to the letter of the law, would have to sell the "court-house square," or part of it, to enforce its payment. The district court, however, held that this could not be done; but that a general personal judgment, in lieu thereof, could be rendered against the county board; and so it rendered one. Where it got the authority to do so is not apparent. It is well settled that property-holders are not personally liable for these special taxes, and may refuse to pay them; thus compelling the city to make them out of the assessed lots, or not at all. *Flournoy v. Jeffersonville,* 17 Ind. 169, 318; *Taylor v. Palmer,* 31 Cal. 240; *St. Louis v. Allen,* 53 Mo. 44; *Neenan v. Smith,* 50 id. 525; *St. Louis v. Bressler,* 56 id. 350; *Mix v. Ross,* 57 Ill. 121; *Buell v. Ball,* 20 Iowa, 282; *Brown v. Joliet,* 22 Ill. 123.

Wherefore, this judgment deprives the county board of its

right to abandon the square to the city, and binds it personally to pay the assessment, *nolens volens*, by levying a tax upon all the people of the county, including even the very persons who have to pay, or have already paid, this same assessment on their own lots, thereby imposing upon them double taxation.

3. Paragraphs 1611, 1612, 1630 (clauses 1, 4, 5), and 1655, Gen. Stat. of 1889, confer exclusive authority on the county board in relation to the county property, indebtedness, and expenditures. *Comm'rs of Neosho Co. v. Stoddart,* 13 Kas. 207. Yet, according to the court below, the city of Ottawa has absolute and exclusive control over the county, so far as macadamizing the streets on the four sides of the "courthouse square" is concerned, and may at any time compel it to pay assessments therefor.

4. The cases of *County of Worcester v. Worcester,* 116 Mass. 193, or 17 Am. Rep. 159, and *Harris Co. v. Boyd,* 70 Tex. 237, or 7 S. W. Rep. 713, are precisely in point, and cite all the authorities. We call the court's special attention to them, and particularly to the reasoning of the court in the Texas case. The decisions of the supreme court of Illinois, in *County of McLean v. Bloomington,* 106 Ill. 209, and *Adams Co. v. City of Quincy,* 130 id. 566, or 22 N. E. Rep. 624, uphold the judgment below; but these cases turned upon art. 9, § 9, of the constitution of Illinois of 1870, which is not found, either in substance or otherwise, in that of Kansas. *Sioux City v. School District,* 55 Iowa, 150, or 7 N. W. Rep. 488; *People v. Mayor, &c.,* 4 N. Y. 420, or 55 Am. Dec. 266; *St. Louis Public Schools v. St. Louis,* 26 Mo. 468; *Baltimore v. Cemetery Co.,* 7 Md. 517, are none of them pertinent, because the question between a county and a city within it was not involved in any of them.

5. The county is a part of the state government superior to the city in many respects. And general words in a statute, such as those in § 788, 2d subdivison, 3d clause, *supra,* should not be so construed as to subject the former to the latter in any wise, unless the intention of the legislature be

manifest. No such power should be vested in the city by mere implication. "Municipal corporations are creations of law, and can exercise only powers conferred by law, and take none by implication." 2 Kas. 357; 5 id. 545. Besides, the terms of that clause in § 788 are clearly limited by the language of § 790, imposing the assessment only "upon the taxable property chargeable therewith." This phrase plainly evinces that the legislature did not intend that the city should levy this special tax on such property as "court-house square." But it may be asked, how then are shire towns in Kansas to obtain funds wherewith to pave the streets adjoining such squares? The answer is plain. Let the city council induce or persuade the county board to make orders, or enter into contracts, providing for the work and the means to pay for it. If they refuse, the cities should either levy the money on the taxable property within their bounds or abandon the enterprise.

*H. A. Richards*, for defendant in error:

There is a marked and recognized distinction between taxation, or the levying of taxes for general purposes, and assessments, or levying special taxes for improvements. Article 11 of the constitution relates to general taxation, and confers no power upon the legislature to authorize cities to make special assessments upon any property for local improvements; but § 5, article 12, directs that "provision shall be made by general law for the organization of cities, towns, and villages; and their power of taxation, assessment, etc., . . . shall be so restricted as to prevent the abuse of such power." The word "assessment" is there used in its technical sense, and relates to special taxation for local improvements. *Hill v. Higdon,* 5 Ohio St. 243 — 67 Am. Dec. 289; *Hines v. City of Leavenworth,* 3 Kas. 186; *City of Emporia v. Norton,* 13 id. 569.

Section 5, article 12, contains all the constitutional authority given the legislature to pass laws by which cities may be organized, with power to tax and make assessments, and contains no exemptions or restrictions, except as to the abuse of

power.   The great weight of authority shows that the constitutional exemption in § 1, art. 11, refers only to taxation for general purposes, and has no reference to special taxes, or assessments for local improvements.  Cooley, Tax., p. 147; Hilliard, Tax., pp. 25, 26, 366, 370; 2 Dill. Mun. Corp., §§ 735, 776, 777; *Hines v. City of Leavenworth*, 3 Kas. 186; *Paine v. Spratley*, 5 id. 546; *Sioux City v. School District*, 55 Iowa, 150; *Board of Improvement v. School District*, 19 S. W. Rep. 969; *Hill v. Higdon*, 5 Ohio St. 243 — 67 Am. Dec. 289, and notes.

The city has the exclusive care and control of its streets, and is responsible for all damages resulting from their dangerous condition.   The legislature has given cities no power to tax or assess property to raise funds for macadamizing streets, other than that adjacent to the street macadamized. If, then, no assessment can be lawfully made against property belonging to the county, it leaves cities in the remarkable condition of being responsible for failing to do that which the legislature has given them no power to do.

That the legislature had full power, under § 5, article 12, of the constitution, to authorize a burden to be imposed upon a county, one of its own agencies, for its own benefit and for the benefit of the public, seems unquestionable.  *The People v. Mayor of Brooklyn*, 4 N. Y. 419; 2 Desty, Tax., p. 1248, and cases cited.

To hold that the city had no authority to levy a special assessment against the property of the county, under § 32, chapter 19, for macadamizing the street adjacent to such property, would be equivalent to holding that the legislature, with full constitutional power to give such authority to cities, when it passed the act authorizing cities to make assessments for local improvements against all lots and pieces of ground adjacent to such improvements, intended that the courts should so construe the act as to exempt certain property from assessment, contrary to justice and equity.

See, also, *City of Ottawa v. Rohrbaugh*, 42 Kas. 258.

The plaintiff in error seems to base its argument princi-

pally upon the ground that special taxes are charges upon the property, and that the owner is not personally liable, and that in this case, because the property cannot be sold, no valid assessment can be levied against it.

In answer to the first point, we say the overwhelming weight of authority is in favor of the liability of the owner of the property. Cooley, Tax. 472, 473, and cases cited; *Hassan v. Rochester,* 67 N. Y. 528; *McLean v. Bloomington,* 106 Ill. 209; *Adams Co. v. City of Quincy,* 130 id. 566.

We call the attention of the court to the fact that the Missouri and California cases cited by the plaintiff in error were decided upon the point that the constitutions of the states contain no provisions like ours for the organization of cities, towns, and villages, with power of taxation, assessment, etc.; and while the Illinois court had laid down the rule in regard to the special assessment of property of private owners, in 106 Ill. 209, *supra,* a case directly in point, the court holds that the county is liable, and that an action at law can be maintained for the amount of the assessment. The clause in the Illinois constitution relating to the organization of cities, etc., with power to tax and make assessments, is substantially and practically like our own.

In answer to the second point, our own supreme court has said: "The power of sale is not a necessary incident to the power to 'levy and collect.' The power to levy and collect can be exercised and enjoyed, and the objects of the corporation secured without the power of sale. Thus, in case this way of enforcing collections of taxes or assessments is withheld or unauthorized, such corporation may provide another method, by means of which the collection may be secured, as, for instance, by judicial proceedings." *Paine v. Spratley,* 5 Kas. 548; 23 Iowa, 170, 410.

We claim that the city had full authority, under § 32, chapter 19, to levy the assessment against the property of the county, and that there are no constitutional or statutory exemptions or restrictions that render the levy invalid. If this be true, then there is a legal and equitable claim against

the county, which this action is brought to establish, and the decision of the district court should be sustained.

The opinion of the court was delivered by

HORTON, C. J.: The city of Ottawa, in Franklin county, is a city of the second class. Block 85 in that city was granted to the county of Franklin by the Ottawa Town Company for a court-house square, and county buildings have been erected thereon. In 1887, the city of Ottawa, under the provisions of the statute, macadamized Main street between Tecumseh and Fifth streets, and a special assessment on account of such macadamizing was made under the statute upon said block 85, amounting to the sum of $573.10. Subsequently, a claim for that amount was presented to the board of county commissioners for allowance. This was refused, and an appeal was taken to the district court. It was there allowed, and judgment rendered accordingly. Complaint is made of this judgment.

The question is, Had the city of Ottawa the power to levy a special assessment of $573.10 for the improvement of Main street in front of the "court-house square" without the consent of the board of county commissioners, and then collect it by judicial proceedings against the county? Section 5 of article 12 of the constitution ordains: "Provision shall be made by general law for the organization of cities, towns, and villages; and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit shall be so restricted as to prevent the abuse of such power." Paragraph 788, General Statutes of 1889, grants to cities of the second class full authority to enact ordinances "to open and improve streets, avenues, and alleys, . . . within the city, and, for the purpose of paying for the same, shall have power to make assessments in the following manner, to wit: . . . For paving, macadamizing, curbing and guttering all streets, avenues, and alleys, . . . the assessment shall be made for each block separately on all lots and pieces of ground to the center of the block, on either side of such street or ave-

48—49 KAS.

nue, the distance improved or to be improved." (Gen. Stat. of 1889, ch. 19, § 32.) This section authorizes the improvement of streets, and provides that in payment the city shall have power to make assessments upon all lots and pieces of ground abutting upon the improvement, without any exemption or reservation whatever. This court has ruled that § 1, article 11, of the constitution of the state, providing for a uniform and equal rate of assessment and taxation, relates to taxes, and does not apply to such special assessments or taxes as are imposed upon abutting lot-owners in cities for street improvements. (*Comm'rs of Ottawa Co. v. Nelson*, 19 Kas. 234; *Hines v. City of Leavenworth*, 3 id. 186.) It has been decided frequently by this court that a city has exclusive care and control of its streets and sidewalks, and must make them reasonably safe for travel. (*City of Atchison v. King*, 9 Kas. 550; *Jansen v. City of Atchison*, 16 id. 358; *Osage City v. Brown*, 27 id. 74; *Maultby v. City of Leavenworth*, 28 id. 747.) It follows necessarily that a city must keep in repair its streets and sidewalks. The statute provides how this may be done. There is no exemption in the statute of a court-house or other public grounds. Streets and sidewalks in front of or around a court-house square, or other public ground, should be kept in as safe condition by the city as other streets and sidewalks. It is not just that the other abutting lot-owners pay the special assessments intended to improve or benefit the court-house square. It is certainly unfair that the tax-payers of the city should pay for all the special improvements beneficial to the court-house square, when all the tax-payers of the county are equally interested therein.

It is said by Judge Cooley that—

"It is no objection to an assessment for a local work that the property assessed is used for a purpose that will not be specially advanced by the improvement ; as, for instance, that it is dedicated to the purposes of sepulture, or is occupied by a building erected for the purposes of public worship, or is devoted to school or charitable purposes, or constitutes the

track of a railroad, or is put to any use to which the market value of the property is unimportant. There is nothing necessarily permanent in any present use; not sufficiently so, at least, to give it a controlling influence in determining principles of taxation. Even public property is often subjected to these special assessments; there being no more reason to excuse the public from paying for such benefits than there would be to excuse from payment when property is taken under eminent domain." (Cooley, Tax., § 458; *St. Louis Public School v. St. Louis*, 26 Mo. 468.

In *Mayor of Baltimore v. Green Mountain Cemetery*, 7 Md. 517, it was held that —

"The property of the United States, of the city and county of Baltimore, are all exempted from taxes, and yet it has never, so far as we are informed, been contended that it was not liable for the paving done in front of it, and we can see no reason why that of the appellees should be. If the latter be not responsible, then it is evident the street must forever remain unpaved, or the expense of it be borne wholly and entirely by the proprietors of the lots opposite. Surely this never could have been the intention of the legislature, nor can it be imagined it was its purpose to compel the city generally to do it. It must be viewed practically as a benefit conferred on the property of the appellees, and the mere fact that they were indifferent to it ought not to avail in their favor, any more than the like indifference of an individual proprietor would shield him from liability to pay his quota when paving is done in front of his ground."

In *Hassan v. City of Rochester*, 67 N. Y. 528, Miller, J., in deciding the case, used the following language:

"*In the matter of the Mayor of New York*, 11 Johns. 77, it was held that . . . churches, which were exempt from taxation under the act of 1801, were not exempted from assessments for local improvements. The same rule would render the property of the state liable for such assessments. As these are considered under the decisions as benefits to the property assessed, increasing its value, and not as a tax, no valid reason exists why the state, any more than individuals, should be exempted from paying for the advantages conferred. A different rule would compel individual lot-owners to pay assessments levied for improvements which were a benefit to the

state lands without any adequate advantage, and in many instances impose a burden which would be extremely onerous and produce great injustice. This could not have been intended. Although the state cannot be made a party to an action to enforce such a claim and be sued in its sovereign capacity, it may be assumed that the state will provide means for the liquidation of assessments imposed by virtue of laws enacted by its legislature, and that, as has been frequently done heretofore, appropriations will be made for that purpose."

We do not think that the phrase in ¶ 790, Gen. Stat. of 1889, concerning "the taxable property chargeable therewith" restricts a city from levying special assessments or taxes upon public grounds, because, if construed as is claimed by counsel for Franklin county, then all the property used exclusively for literary, educational, scientific, religious, benevolent and charitable purposes will also be exempt from the levy or payment of special assessments or taxes. This is contrary to the general view held by the profession, and is opposed to the practice prevailing in the cities. While such property is exempt from taxation, under § 1, article 11, of the constitution, it is not exempt from special assessments or taxes for the improvement of streets or sidewalks.

The serious difficulty in this case is as to the manner of collecting the special assessment. We held, in the case of *Comm'rs of Stafford Co.* v. *National Bank*, 48 Kas. 561, that as the statute makes special provision for the collection of taxes, they are not a debt in the ordinary sense of the term, and consequently an action will not lie for their recovery. We have no inclination to change that ruling. A court-house cannot be sold or disposed of under tax proceedings or at forced sale for special assessments or taxes levied upon the ground thereof. Such grounds are for the uses and purposes of the public, and are essential to the administration of the executive and judicial duties of the county and state, and, therefore, are not subject to sale for taxes or upon judgments rendered against a county. Perhaps it ought to be assumed, when a special assessment is made in accordance with the pro-

visions of the statute for the opening or improvement of a public street, that the officials of the county would allow and provide for the payment of the same without any action or other legal proceedings being necessary. It is presumed that the sovereign or state will do no wrong. If a county, however, refuses to pay the special assessments or taxes legally levied against its property, as such property, on account of the public uses to which it is applied, cannot be sold at a tax or other forced sale, there is no impropriety, after the claim is disallowed, in permitting the district court, on appeal, to adjust the amount thereof. The judgment can then be paid as other judgments against a county. (Gen. Stat. of 1889, ¶ 1618.) Such rule, it seems to us, will be beneficial to all concerned, will work no hardship upon any one, and permit the streets and sidewalks around public grounds to be improved and repaired as the statute prescribes and in an equitable manner. (Cooley, Tax. 572, 573; *Hassan v. Rochester*, 67 N. Y. 528; *McLean v. Bloomington*, 106 Ill. 209; *Adams Co. v. City of Quincy*, 130 id. 566.) The Illinois cases are very much to the point.

Attempt is made in one of the briefs to show that the constitution of Illinois, making special provision for cities and towns to levy special assessments, differs widely from the provisions of the constitution of this state. We have examined the provisions referred to and do not note the difference claimed.

Our attention is called to the decisions of the courts of Massachusetts and Texas, to the effect that the property of counties is exempt from special assessments or taxes. Notwithstanding the reasoning of the able courts of those states, we are inclined to think, under the provisions of our constitution and statutes, the better rule to be that cities have the power to levy upon public grounds the special assessments necessary to improve the streets and sidewalks in front or around them; and where, for public reasons, the property

cannot be sold at forced sale, then that the assessments can be collected as stated.

The judgment of the district court will be affirmed.

All the Justices concurring.