No. 23,750.

THE CITY OF ST. JOHN, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF STAFFORD, *Appellant.*

SYLLABUS BY THE COURT.

1. COUNTY PROPERTY—*Within Corporate Limits of City—County Liable for Paving Assessments.* Where the plat of a county-seat town shows a block labeled "county square," the town company later executing to the county a deed therefor without restrictions as to use, and the commissioners assert a right of control, thereby accepting the property, full title thereto is vested in the county, and it is liable for the payment of paving assessments, notwithstanding the square has been continually used as a public park, the city bearing most of the expense of improving and caring for it, and the county having made no use of it except as it may be regarded as sharing in its maintenance as such park.

2. SAME—*Duty of County to Pay Paving Assessments Levied by City.* It is the duty of the county to pay parts of a paving assessment charged against property which it owns as they fall due under the tax laws, and in the present instance its obligation is to make a first payment of one-tenth of the assessment with six per cent interest for one year on the total.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed April 8, 1922. Affirmed.

*Ray H. Beals,* and *Robert Garvin,* both of St. John, for the appellant.
*Paul R. Nagle,* and *Harry T. Gray,* both of St. John, for the appellee.

The opinion of the court was delivered by

MASON, J.:   When St. John, a city of the third class and the county seat of Stafford county, was platted, one block, numbered 7, bore the designation "County Square." A few years later the town company executed to the county a deed for the same tract, described therein as "block seven in the original subdivision of the town of St. John, Kan., known as the 'County Square.'" In 1920 the city caused the streets surrounding this block to be paved, guttered and curbed, and to meet a part of the cost thereof made an assessment against it of $19,386.75. The assessment not having been paid the city presented to the county a claim for $3,101.88, being one-tenth of that amount, with interest for one year on the total at six per cent. Payment being refused, the city sued the county. A jury was impaneled and evidence introduced. The court directed a verdict for the plaintiff for the amount claimed, on which judgment was rendered, from which the defendant appeals.

Complaint is made of the rejection of evidence and of the refusal to submit the case to the jury. The judgment is obviously based upon the theory that under all the evidence produced by the defendant as well as that introduced by either party the plaintiff was entitled to judgment upon the facts established by public records, and if this view is sound the rulings referred to are correct or nonprejudicial.

1. The city relies upon *Comm'rs of Franklin Co. v. City of Ottawa,* 49 Kan. 747, 31 Pac. 788, where the county was held liable for the payment to the city of the amount of a paving assessment against the courthouse square. Here the county denies liability and undertakes to distinguish this case from that on the ground that it is not really the owner of the property against which the special tax is assessed and at all events has never occupied or used it. The county has a courthouse which is located upon another tract of which it is the owner. The square in controversy is used as a public park. It has been improved so as to be adapted to that purpose at the expense of individuals and voluntary associations and of the city. The city has expended and continues to expend consid-

erable money for labor in its care, and has passed an ordinance declaring it a public park and another penalizing injuries to the vegetation or improvements in public parks. The county at one time constructed (through a contractor) a cement walk around the square, paying three-fourths of the expense, the city paying the other fourth. The county also paid a part of the cost of a gutter along the sidewalk. At another time the county granted to a civic club permission to improve the square, which was acted upon by the erection of a fountain. In 1912 an order was entered on the commissioners' journal in these words: "In view of the fact that the public square in the city of St. John belongs to Stafford County, the county commissioners in special session this ninth day of April, ordered the county clerk to make record of the fact said commissioners reserve the right to order out of the way any improvements that may have been or may be put in said public square and at the expense of the party or parties who make such improvements."

The situation is not the same as that presented in *Hurd v. Comm'rs of Harvey Co.*, 40 Kan. 92, 19 Pac. 325, and *Jefferson County v. Oskaloosa*, 80 Kan. 587, 102 Pac. 1095, in each of which cases land in a city was dedicated for a public park and the county merely took the formal legal title, the right of possession and control being normally in the city. Here the block was not dedicated as a public park, but specifically as a "county square," and the deed placed no restrictions on the use to be made of it. Nothing further, unless an acceptance by the county, was required to vest in it the absolute ownership. "Any real estate . . . conveyed to any county shall be deemed the property of such county." (Gen. Stat. 1915, § 2529.) Acceptance by the county is abundantly shown by the evidence already set out, especially by the order quoted in full. The circumstance that the deed recited a consideration of one dollar which was never actually paid is immaterial. The fact that the county has not hitherto erected any building upon the square or made any use of it except as it may be regarded as participating in its maintenance as a public park does not affect the state of the title. The county having once acquired ownership could not divest itself thereof without a vote of the people, if, as seems clear, it is worth more than $5,000. (Gen. Stat. 1915, § 2548.) The constitutional provision exempts from taxation property used for county purposes, no reference being expressly made to ownership. (Art. 11, § 1.) But the statute in terms exempts all property belonging exclusively to a county. (Gen. Stat. 1915, § 11151, subdiv. 6.) Such

exemption, in a sense, does not relieve the property from liability for special assessments for local improvements, but the statutory provision evidences a legislative policy against allowing it to be sold for a debt due the public even when not actually in use for county purposes, doubtless for much the same reason that the issuance of an execution against the county is forbidden. (Gen. Stat. 1915, § 2535.) We conclude that the fact that use has not as yet been made of the square as a site for a building or other purpose specifically for the benefit of the county does not take it out of the rule declared in the Franklin county case.

2. The county also contends that the city, having proceeded against the property by levying an assessment against it, should be precluded from changing its course and attempting to hold the county personally liable by presenting a claim directly to it. The practice here followed is that adopted in the Franklin county case. Where the property is owned by a county it seems entirely proper, if not necessary, that the proceedings up to the point of the sale of the land for nonpayment should be the same as in other cases, and that when the amount of the charge is ascertained and evidenced by an assessment, the duty of the commissioners is to provide for its payment.

The county further argues that in any event there is no justification for the amount for which judgment was here rendered— that unless liable at once for the entire amount of the charge against the block it should be held only for one-tenth thereof with interest at six per cent from the date of the presentation of the claim. Our view is that the county's liability, except for being personal and not merely a charge against the property, is the same as that of a private owner—to pay the amount of the assessment against the property as it becomes due under the tax laws. The statute provides that where improvement bonds are issued under it the city clerk shall annually certify a list of the property liable "together with the respective amounts due on each of said tracts, . . . which amounts shall include the annual installments and interest on all unpaid balances for one year, at a rate not to exceed six per cent per annum; and such amounts so certified shall be collected as other taxes are collected." (Gen. Stat. 1915, § 1976.) In this instance six per cent bonds were issued, one-tenth of the total maturing each year for ten years, and the assessment was required to be paid "in ten equal installments of one-tenth of said assessment each

year for a period of ten years with interest at the rate of six per cent per annum for such period." The first payment would therefore be one-tenth of the total assessment, with interest for one year on the whole amount—which is the sum claimed and allowed. If the county had offered to pay the entire sum at once a different question would be presented, but as it denied liability altogether the computation adopted seems to be the proper one.

The judgment is affirmed.