[Civil No. 2639. Filed January 16, 1928.]

[263 Pac. 5.]

HATTIE L. MOSHER, Individually, and HATTIE L. MOSHER, as Surviving Partner of S. D. LOUNT & SON, Appellant, v. CITY OF PHOENIX and PACIFIC CONSTRUCTION COMPANY, a Corporation, Appellees.

184

Mr. John W. Ray and Mr. J. C. Niles, for Appellant.

Mr. W. L. Barnum, City Attorney, for Appellee City of Phoenix.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellee Pacific Construction Company.

LOCKWOOD, J.—Hattie L. Mosher, hereinafter called plaintiff, brought suit in the superior court of Maricopa county against the City of Phoenix and the Pacific Construction Company, a corporation, hereinafter called defendants, asking that the latter be enjoined from proceeding in the improvement and paving of East Madison Street in the City of Phoenix. The matter was heard before the court sitting without a jury, evidence was taken, and thereafter the court filed its findings of fact and conclusions of law, and entered judgment in favor of defendants, denying the injunction prayed for, whereupon plaintiff has appealed to this court.

There are certain facts which are not disputed, and we state them briefly as follows: About the twenty-first day of July, 1926, the City of Phoenix adopted an ordinance and plans for the improvement and paving of East Madison Street in said city and passed

resolutions of intention to make the improvement in accordance with the provisions of chapter 13, title 7, Revised Statutes of Arizona of 1913, Civil Code, as amended by the Session Laws of 1917 (Laws 1917, chap. 52), and 1922 (Laws Sp. Sess. 1922, chap. 25). On the sixteenth day of August, which was the last day for such action, a protest was filed with the city clerk of the City of Phoenix, purporting to have been signed by various and sundry owners of land along said improvement aggregating 2,322.97 feet frontage thereon, and a frontage in the improvement district of 4,137.47 feet. This protest was filed in the office of the city clerk shortly before 5 P. M. on the sixteenth day of August. At 10:30 P. M. of the same day and at her residence there were presented to Miss Mildred Sackman, who was acting clerk of the City of Phoenix, documents requesting the withdrawal of certain signatures from the protests which had been filed a few hours before. These documents were indorsed by her with the day and hour of their receipt and by her taken to the office of the city clerk the next morning and filed therein. The protests and the withdrawals were referred by the city commission to the city engineer for checking, and following such check the engineer recommended that the protests be denied on the ground that withdrawals aggregating 275 feet frontage upon the improvement and 392.52 feet in the district had been filed and that the protests were signed by various persons other than the recorded owners without showing authority for their signatures, covering a frontage on the improvement of 423 feet and within the district of 939.51 feet. Upon this recommendation, the city commission denied the protest and proceeded with the improvement, and shortly thereafter awarded a contract therefor to the defendant Pacific Construction Company, whereupon this suit was brought.

There are some eleven assignments of error raising certain legal propositions which we will discuss and apply to the facts as shown by the foregoing statement and such other facts appearing from the evidence as may be material. The first question is whether or not the withdrawals aforesaid were legally made. It is contended by plaintiff that the withdrawals could not be filed except at the office of the city clerk, and during regular office hours, which she claims end at 5 P. M. It is the position of defendants, on the other hand, that the filing may be made with the city clerk or his regularly authorized deputy at any place in the city, and at any hour before 12 midnight of the last day upon which withdrawals could be filed legally.

We have discussed the general question of withdrawals from a protest against street improvements in the case of *In re Mosher*, 25 Ariz. 297, 216 Pac. 242. Therein we state:

"Under a liberal construction of this law, such construction being made mandatory by paragraph 1976 of 1913 Civil Code of Arizona, being section 24 of the Improvement Law, objectors who have signed a paper of protest against a proposed street improvement may withdraw their names from such paper during the period fixed by the law within which protests may be filed, and such persons withdrawing may be counted as favoring such proposed improvement. . . .

"In following the rule laid down in the case of *City Street Improvement Co.* v. *Babcock, supra* [123 Cal. 205, 55 Pac. 762], and cases in support thereof [citing cases], and adopting the rule of liberal construction, other questions raised by appellee's brief are necessarily answered. That is, indorsement of the city clerk is not necessary to make the protest a valid one. . . . "

Three principles of law were set forth: First, that the improvement act is to be liberally construed to promote its object, which is the improvement of the

streets of a municipality, when it is thought advisable by the legislative authorities thereof, and when a majority of the property owners affected by such improvement do not protest legally against it; second, that when a protest has been signed, the persons signing it have a right to withdraw their names therefrom at any time during the period fixed by law within which protests may be filed; and, third, that the indorsement of the city clerk upon a protest (and inferentially upon a withdrawal of such protest) is not necessary to its validity.

Both plaintiff and defendants have cited many cases to us wherein the question of the proper place, time and method of "filing" a document required by law to be filed has been discussed. Among these cases there are but two in which the validity of protests under street improvement acts were involved. One of them is *City Street Imp. Co.* v. *Babcock*, 6 Cal. Unrep. 910, 68 Pac. 584. It does not appear therefrom whether or not the protest was delivered to the clerk at his office during office hours. The court in discussing the matter says:

"The entire proceeding for the improvement of a street is of statutory creation, and whatever acts the statute requires to be performed within any designated time, or in any prescribed form, must be performed within that time and in that manner, in order that they may have the effect which the statute prescribes for them. Originally the filing of a paper consisted in having the proper officer put it upon the string—filum—on which the other papers in the proceeding were placed. In modern days it is usually held that a paper is filed on the part of the party who is required to file it when he has presented it at the proper office and left it with the person in charge thereof (*Tregambo* v. *Mining Co.*, 57 Cal. 501), and paid the fees for filing, if any are required (*Boyd* v. *Burrel*, 60 Cal. 280). The subsequent omission of the officer to make any indorsement thereon will not prejudice his rights."

The other case is *Salt Lake & Utah R. Co.* v. *Payson City,* 66 Utah 521, 244 Pac. 138. In that case it appears specifically that the protests were left with the city recorder at his home and not at his office, at 7:30 P. M. on the last day on which protests could be made. Between the hours of 9 P. M. and 12 o'clock midnight on that date certain of the protestants who had signed such protests left written notice of withdrawal therefrom with the city recorder. The withdrawals, together with the protests, were taken by the city recorder to his office the following morning and there placed on file. The court does not expressly pass upon the question of the effect of the place and hour of filing, but says:

"There can be no question that the property owners who withdrew their protests had the right to protest the improvement, and, in our judgment, likewise had the right to withdraw their protests at any time before the time for filing protests had expired. . . . Among the cases cited in support of the respondents' contention are the following [citing cases]. An examination of these authorities will indicate that courts under statutes very similar to ours have generally held that a protestant has the right to withdraw his protest at any time before the expiration of the time for filing the same, and that by so doing the municipality acquires jurisdiction to make the improvement."

On examining the various other cases cited by the parties but which do not specifically discuss street improvement statutes, it seems to us that we find running through them a clear line of demarcation. When the statute provides that the document must be filed "in the office" of a particular official, it must be presented to such office for filing during the regular office hours, or the filing is not valid, at least until such time as it does actually reach the office. When, however, the only requirement in the statute is that the document be filed "with" some particular officer,

without mentioning his place of business, there are two rules. If the purpose of filing the document is to give constructive notice to third parties of its existence, then the only place and time when it can be filed so as to have any legal effect is in the office and during regular office hours. When, however, the purpose of such filing is not to give such constructive notice to third parties, but to notify the official or his superiors that a certain thing has been done, so that they may act thereon in accordance with law, a filing with the officer is good if done at any place within his jurisdiction and at any time within the period fixed by the statute. The cases where the last rule is followed are generally those involving the filing of election petitions and such similar documents, but the principle invoked therein applies with equal force to any other document having the same purpose, to wit, to notify a public official of certain facts so that he may act thereon. *In re Norton,* 34 App. Div. 79, 53 N. Y. Supp. 1093; *Grant* v. *Lansdon,* 15 Idaho 342, 97 Pac. 960.

Applying these rules to the case herein it is obvious on examining the statute that the purpose of filing the notice either of protest or withdrawal is not to give information to third parties, even though they may incidentally be interested in knowing the attitude taken by the protestants or those withdrawing their objections, but to furnish data to the municipal officers whose agent the clerk is, so that they may perform their duty as provided by law. Such being the case, we are of the opinion that so long as either protest or withdrawal was filed within the time fixed by the statute it was not necessary that they be filed in the *office* of the city clerk or during his ordinary office hours. If he could be found at any place within the city, and the notices delivered to him at any time on the last day allowed by law for their filing, such delivery was a compliance with the statute, and the

municipal authorities were bound to consider both protests and withdrawals in determining whether or not they had jurisdiction to proceed with the improvement.

The next question raised is as to the sufficiency of the form of the withdrawals. A number of them were couched in the following language:

"Phoenix, Arizona, August 16th, 1926.
"To the Hon. Mayor and Commissioners of the City of Phoenix:
"I, or we, the undersigned, hereby authorize you to withdraw our signatures from the protest for the paving of East Madison street from Eighth to Twelfth street."

It is claimed that this is not an unqualified withdrawal, but an attempt to delegate to the municipal officers a discretionary right to withdraw the names of the signers. We cannot agree with this construction of the documents. As we have before stated, the act is to be construed liberally, and it would be entirely too technical to hold that a notice of this character was not sufficient to apprise the municipal officers of the intent of the parties to withdraw from the protest.

It is further claimed by plaintiff that one of the withdrawals was invalid in that the original protest was signed by Jacob Isaacson and Lydia Isaacson, his wife, whereas the withdrawal was signed only by Lydia Isaacson. It appears from the record that when the commission met to consider both the protest and the withdrawals, there was before it a telegram from Jacob Isaacson approving his wife's signature to the withdrawal from the protest. We think, in view of the relationship of the parties and the nature of the property, this is sufficient to show that her signature was meant to cover both interests, and that the husband had ratified her act, in the absence of any evidence that she was not so authorized. 2 C. J.

672. The withdrawals from the protest legally made and approved as withdrawals by the commission aggregate 275 feet frontage on the improvement, and we think they were properly deducted from the protest by the trial court.

There remains, then, for our consideration, some five items of the protest, covering 210.47 feet frontage on the improvement, which were disallowed by the city commission and also by the trial court. These disallowals, together with the withdrawals, reduce the protest below the statutory figure required to take from the commission jurisdiction to proceed with the improvement. The withdrawals alone, however, were not sufficient to so reduce the protest, and we must therefore consider the action of the court in disallowing certain protests which were not withdrawn. The first one is the protest of Ysabel Espinosa Marines, involving a frontage of 50 feet. We have examined the record on this point, and we are convinced that the trial court erred in striking this item from the protest. It should have been allowed to stand on the testimony as offered.

The second protest is that of W. H. Hartranft, also covering 50 feet frontage. His signature was affixed to the protest by C. W. Cisney, acting as Hartranft's agent. There was offered in evidence a letter from the owner to Cisney which reads in part as follows:

"I am in favor of getting a pave street to my warehouse—do not wish to approve of any temporary pavement. So if there is a reasonable chance of getting a good concrete job down that street by passing this present job up you authorized to protest contemplated job, but only want protest on quality of pavement and not on paving the street.

"Thanking you for bringing this to my attention, I remain,

"Sincerely,
"WM. L. HARTRANFT."

This letter conferred a discretion upon the agent, and it is the ordinary rule of law that under such circumstances the act of the agent may not be questioned. *Vermily's Case,* 43 N. J. Eq. 146, 10 Atl. 605; Story on Agency, 72. The item should not have been stricken.

The third signature is that of S. D. Lount & Son, by Hattie L. Mosher, representing 22.97 feet frontage. It was disallowed by the court on the ground that the plaintiff was not the holder of the legal title, nor in possession of the lot in question, nor entitled to manage the same, for the reason that the property was under the control of a receiver at the time the protest was filed. The evidence in regard to the ownership of this property was in sharp conflict. Plaintiff's testimony was that the property belonged to the partnership of S. D. Lount & Son, of which she was the surviving member, and entitled to administer thereon, and not to the partnership doing business under the name of City Ice Delivery Company, which was the one in charge of a receiver. The evidence is that the property was originally conveyed to S. D. Lount & Son. There had been in existence for some years before such deed was made a partnership under the name of S. D. Lount & Son, consisting of plaintiff herein, her father, S. D. Lount, her mother, Julia Lount, and her brother, W. B. Lount. At the time the deed was made to S. D. Lount & Son two of the partners were dead; but plaintiff claimed a new partnership under the same name had been formed, consisting of herself and W. B. Lount, and that such partnership owned the land in question. Plaintiff testified that the firm of S. D. Lount & Son was a copartnership, a separate entity from that of City Ice Delivery Company, a copartnership, consisting of the same members, the former holding the property operated by the latter. There was evidence before the

court that plaintiff had previously dealt with the property as though it belonged to the copartnership of City Ice Delivery Company, which was in the hands of a receiver, and not to a different copartnership under the name of S. D. Lount & Son. We think on this evidence it was within the discretion of the trial court to find that the property belonged to the City Ice Delivery Company, and that since it was in the hands of a receiver, plaintiff was not authorized to sign as representing it, and, under our familiar rule, we cannot disturb the finding. The court therefore was correct in striking this item from the protest.

The fourth item stricken from the protest covered 100 feet frontage and the signatures were those of A. J. Moore and Bernardo Pasqualetti. It appears from the evidence that this property has been originally owned by Moore and Pasqualetti as tenants in common, but that some time after its purchase the latter deeded his interest to his wife. Pasqualetti claimed on the trial that his wife later gave him an unrecorded deed covering various properties, among which the one in question was intended to be included, but by some mistake it was omitted therefrom. Be that as it may, we think the court erred in allowing the signature of Moore to stand only for one-half of the frontage. It is the ordinary rule of law that one cotenant to a protest will protect not only his own interest but that of his cotenant. *Los Angeles L. Co.* v. *City of Los Angeles,* 106 Cal. 156, 39 Pac. 535; *Allen* v. *City of Portland,* 35 Or. 420, 58 Pac. 509; *Chan* v. *South Omaha,* 85 Neb. 434, 133 Am. St. Rep. 670, 123 N. W. 464; *Rhodes et al.* v. *Koch,* 195 Mo. App. 182, 189 S. W. 641; *Findly-Kehl Inv. Co.* v. *O'Connor* (Mo. Sup.), 256 S. W. 798. The court should not have stricken from the protest the 50 feet of which Pasqualetti or his wife was the co-owner.

The last item represents a frontage of 50 feet. The trial court allowed one-fourth the amount, striking 37½ feet. It appears from the undisputed evidence that Phoenix Title and Trust Company as trustee was the legal owner of the property, with full right of management thereto until all of the beneficiaries agreed that the property should be transferred to them. F. W. Libby, who was a beneficiary under the terms thereof to the extent of one-fourth, affixed his own name and that of his cobeneficiaries. We are of the opinion that under the terms of the trust deed only the trustee could take any action affecting the property to the extent of causing a lien thereon, until and after the three beneficiaries had requested that it be transferred to them. Such being the case, the court should have stricken not only the 37½ feet which it did strike, but also the 12½ feet which it allowed.

We therefore have to be deducted, from the frontage claimed by plaintiff, as protested, the 275 feet covered by the withdrawals, 22.97 feet covered by plaintiff's signature for S. D. Lount & Son, and 50 feet covered by the Libby signature, making a total of 347.97 feet to be deducted from the 2,322.97 feet appearing on the face of the protest, which leaves valid protests aggregating 1,975 feet. In order that the protest should prevent the city commission from having jurisdiction to proceed with the improvement, it was necessary that it represent 2,023.97 feet. It therefore fell a little over 48 feet short of the required amount. The frontage lacking, though small, was sufficient to bring it within the terms of the statute. To quote the language of the Immortal Bard, " 'Tis not so wide as a river, nor deep as a well, but 'twill suffice."

It appearing to us from the record that the city commission acted within its jurisdiction in proceed-

ing with the improvement in question, it follows that the trial court rightly denied the injunction, and its judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.