[Civil No. 3129. Filed November 30, 1931.]

[5 Pac. (2d) 411.]

CITY OF PHOENIX, a Municipal Corporation, Appellant, v. MARY E. WILSON, Appellee.

Mr. Charles A. Carson, Jr., City Attorney, Mr. James E. Nelson and Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Mr. John W. Ray, for Appellee.

LOCKWOOD, J.—Mary E. Wilson, hereinafter called plaintiff, brought suit against the city of Phoenix, a municipal corporation, hereinafter called defendant, to enjoin it from proceeding with the improvement of certain portions of West Polk and West Van Buren Streets, and Twelfth and Fifteenth Avenues, in the city of Phoenix. Judgment was rendered in favor of the plaintiff, granting the injunction, and from such judgment defendant has appealed. The facts are not in dispute, and the issue before us is solely one of law.

It appears that the city commission of Phoenix ordered the improvement in question to be made under the district plan, following the procedure set forth in article 16, chapter 12, Revised Code of 1928 (sections 511–550), known as the Street Improvement Act. Within the district there was an actual street frontage of 11,434.45 feet, of which some 1,800 feet adjoins what is known as University Park, a tract

of land owned by defendant, and used by it as a public park. Within the time provided by law the owners of a large portion of the property affected protested against the improvement. The trial court found that if the frontage around University Park was not counted in determining the total frontage in the district on which the protest must be based legally it was signed by the owners of more than fifty per cent. of such frontage, but that if the frontage around the park be included in making the estimate of such total legal frontage, then the protest was signed by the owners of less than fifty per cent. thereof.

There are two objections to the legality of the proposed improvement made by plaintiff in her brief and on oral argument to the court. The first is that under the charter of the city of Phoenix, the city commission is not authorized to assess the costs of paving streets against the adjoining property. This court has never expressly determined the question of whether the charter does authorize such method of improvement, but the question has been raised directly or inferentially in other cases, and has always been assumed by us to exist. *Mosher* v. *Phoenix,* 33 Ariz. 182, 263 Pac. 5; *Phoenix* v. *Southwest Flour & Feed Co.,* 31 Ariz. 219, 250 Pac. 1060; *In re Mosher,* 25 Ariz. 297, 216 Pac. 242. The whole matter was presented to the Circuit Court of Appeals of the Ninth Circuit and directly passed on by it in the case of *Collins* v. *City of Phoenix,* 26 Fed. (2d) 753. We think we can add nothing to the reasoning of the court in that opinion on the point under consideration, and without further discussion hold explicitly that under the Street Improvement Act of Arizona the city commission of Phoenix has the power to order paving improvements to be made by special assessment, and that when they are so made the procedure to be

followed is found in article 16, chapter 12, *supra,* unless the commission by ordinance provides otherwise. · Charter of the City of Phoenix, chap. 4, § 2, subd. 45.

The second and more serious question is as to whether or not in determining whether fifty per cent. of the street frontage within the district was represented upon the protests duly made, the frontage adjoining University Park is to be included to determine the total legal frontage within the district. It is urged on behalf of plaintiff that since University Park is the property of the city of Phoenix, no lien can be imposed on it under which it can be sold for failure to pay its portion of the cost of the improvement, and that such being the case it cannot properly be considered in determining the total frontage within the district, and in support of such contention plaintiff cites us to the case of *Armstrong* v. *Ogden,* 12 Utah 476, 43 Pac. 119.

Under the statute of Utah and the facts as they appear in the case cited, we think that opinion was eminently correct. We quote from it as follows:

"The total frontage of the district was 3,960 feet. The lowest number protesting, after deducting withdrawals, as claimed by appellant, was 1,878½ feet. But included in the 3,960 feet were 660 feet owned by the city, and used for city-hall purposes, which the city council claimed the right to count in favor of the improving, *notwithstanding it was excluded in the paving ordinance from the property upon which the paving tax was levied,* and notwithstanding the entire estimated expense of $40,000 for the improvement was levied upon the remaining 3,300 feet, by assessing $12 against each of these last-named front feet. If appellants' position were right, the statute permitting property owners in local assessment districts to vote for or against any proposed improvement would become entirely inoperative; at all events, so far as property owners living in close proximity to public

property is concerned. If, for instance, the city council should create a paving district out of the four portions of streets that surround a square used exclusively for city purposes, it would only be necessary to secure the consent of the owner of a single front foot of the property abutting upon the opposite side of the street from the public square to abstain from protesting, and the remaining frontage would not only be powerless to prevent the improvement, but would be compelled to pay practically the entire expenses. Such a proceeding would only be the natural outgrowth of the actions exhibited by the appellants in this case, and would produce great injustice to property owners subjected thereto. So far as proceeding with the improvement or assisting in acquiring jurisdiction are concerned, we have been unable to find any case where public property situated within the confines of a local improvement district has been permitted to affect the result, either one way or the other; and we think that the establishment of such a rule would not only be wrong in principle and wrong in theory, but it would also be contrary to the spirit and intention of the statutes providing for special improvement assessments.'' (Italics ours.)

Had the city commission in this case assessed the entire cost of the improvement on the adjoining private property, including therein the amount which would ordinarily be assessed against University Park were it in private hands, as was done in the case of *Armstrong* v. *Ogden, supra,* there can be no question that it would be the height of injustice to hold the frontage of the park should be considered in determining the total frontage of the district, or in effect voted in favor of the improvement. The whole theory of the Street Improvement Act is that the majority of those who bear the burden of the improvement may determine whether it shall be incurred. The Utah statute of 1890, which governed the situation existing in *Armstrong* v. *Ogden, supra,* provided specifically that the cost of paving should be assessed on

the land abutting upon the streets within the district in proportion to the frontage or area of the lots, and made no provision whatever for the city itself paying any of the costs of the improvement out of general taxation or otherwise. Since obviously public property is not subject to a lien for taxes whereunder it may be sold, there was no method whereby the city could be compelled to pay any portion of the costs of the improvement, and for the reasons set forth in its opinion above quoted, the Supreme Court of Utah very correctly held that city property was not to be included in determining whether a sufficient protest was made.

The legislature of Arizona, however, realizing that in many cases it might work a grave injustice to throw the cost of paving streets adjoining city property on the local taxpayer, very carefully provided in section 518, Revised Code of 1928, that when the proposed improvement was ordered, unless the resolution of intention expressly excluded the city property from the assessment, the municipality itself should be liable for its proportionate share of the expenses. We think this created a situation very different from that in *Armstrong* v. *Ogden, supra.* If the city is to bear its proportionate share of the expenses of improvement, no extra burden is thrown on the other owners of property adjoining the improvement. The owners of the public property of the city of Phoenix are all the citizens of Phoenix in their collective capacity. The city commission represents them in the management of city property, and we are of the opinion that when the commission fails to exclude any of such property from an assessment in the manner set forth in section 518, *supra,* it is in effect an approval of the improvement by the owners of the public property, and an agreement by those owners to pay their part of the costs thereof. Such being the case, we

can see no logical reason why the city of Phoenix in its capacity as owner of University Park should not be considered in determining whether the improvement be made, in the same manner as the owner of any private property.

We think the point that the private owner may have his property sold for the lien if he fails to pay, while the municipal corporation is exempt from such sale, is more one of form than of substance. As was well said in the case of *Clark* v. *City of Weatherford*, 143 Okl. 165, 288 Pac. 278, referring to a similar situation:

"It being against public policy to sell public lands for taxes, the holder of such warrants may not foreclose his lien against the land, *but must resort to the courts to obtain a personal judgment against the city.*" (Italics ours.)

A similar question arose in the case of *Board of Commrs. of Franklin County* v. *City of Ottawa*, 49 Kan. 747, 33 Am. St. Rep. 396, 31 Pac. 788:

"A court-house cannot be sold or disposed of under tax proceedings or at forced sale for special assessments or taxes levied upon the ground thereof. . . . Perhaps it ought to be assumed, when a special assessment is made in accordance with the provisions of the statute for the opening or improvement of a public street, that the officials of the county would allow and provide for the payment of the same without any action or other legal proceedings being necessary. It is presumed that the sovereign or state will do no wrong. If a county, however, refuses to pay the special assessments or taxes legally levied against its property, as such property, on account of the public uses to which it is applied, cannot be sold at a tax or other forced sale, there is no impropriety, after the claim is disallowed, in permitting the district court, on appeal, to adjust the amount thereof. The judgment can then be paid as other judgments against a county. . . . Such rule, it seems to us, will be beneficial to all concerned, will work no

hardship upon anyone, and permit the streets and sidewalks around public grounds to be improved and repaired as the statute prescribes, and in an equitable manner.''

We hold, therefore, that where public property is expressly exempted from a special improvement assessment the frontage adjoining such property should not be considered in determining whether or not the owners of more than fifty per cent. of the property within the district have protested against the assessment, but that where, in accordance with law, the municipality has become obligated to pay its proportionate share of the cost of the improvement, regardless of the fact that public land cannot be sold at forced sale, such frontage should be included in passing upon this question.

For the foregoing reasons the judgment of the superior court of Maricopa county is reversed and the case is remanded, with instructions to enter judgment in accordance with the views expressed in this opinion.

McALISTER, C. J., and ROSS, J., concur.