### BLYTHE v. CITY OF TULSA et al.

No. 23459.    June 11, 1935.

Charles Skalnik, for plaintiff in error.

Allen, Underwood & Canterbury, for defendant in error Standard Paving Company.

H. O. Bland, for defendants in error City of Tulsa and D. H. Pratt, Commissioner of Finance and Revenue of the City of Tulsa.

WELCH, J. This is an appeal from the district court of Tulsa county. The parties occupy the same relative position here which they occupied in the trial court, and will be referred to as plaintiff and defendants.

The suit was instituted for the purpose of quieting title to blocks 1 and 2, Lonsdale addition to the city of Tulsa, in Tulsa county. The property is unimproved. Plaintiff acquired title to the property by a county deed from Tulsa county, dated January 19, 1931. Tulsa county acquired title to the property by resale tax deed dated April 20, 1925, and filed for record June 16, 1925.

The defendant, Standard Paving Company, a corporation, is the holder of certain special paving tax bills issued pursuant to and under the provisions of the ordinances of Tulsa, numbered 3065 and 3497, dated August 10, 1926, and April 9, 1929, respectively. The trial court rendered judgment for the defendants, and plaintiff has appealed.

The question presented by this appeal is whether or not special assessment tax bills for local improvement purposes create a lien against land belonging to the county at the time the special assessments were levied. It is agreed that all things were legally done which would create a lien against the property involved, if such property was subject thereto in any event.

Plaintiff, in support of his contention that the property is not subject to special assessment for local improvements, cites a portion of section 9575, C. O. S. 1921, as follows:

"Exemptions: The following property shall be exempt from taxation: * * *

"Third. All property of the United States, and of this state, and of counties and municipalities of this state."

He appears to treat section 20, chapter 173, Session Laws 1923, which provides as follows:

"Any property which shall be owned by the city, town or county or any board of education or school district, shall be treated and considered the same as the property of other owners, and such city, town, county, school board or board of education within such district to be assessed, shall annually provide by the levy of taxes in a sufficient sum to pay the maturing assessments and interest thereon"

—as general statutory authority to cities and towns to levy special assessments for local improvements on property owned by municipal subdivisions within this state, and proceed upon the theory that without such specific authority such assessments cannot be levied and a lien on the property be created thereby. He points out that the assessments here levied were not levied under the general laws of the state, but were levied under the charter and municipal ordinances of the city of Tulsa; and calls attention to the fact that the city charter contains no such provision as is contained in section 20 of chapter 173, S. L. 1923, supra, and that therefore, under the authority by which the assessments here were made, property belonging to the county

could not be assessed and a lien created thereon thereby.

We do not agree with plaintiff's theory that the city of Tulsa was without authority to levy special assessments for local improvements against property belonging to municipal subdivisions of the state under its charter. Such power and authority existed prior to the enactment of chapter 173, S. L. 1923, and quite apart from same.

Section 7, article 10, of the Constitution of Oklahoma provides:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

Under the provisions of section 3(a), article 18, of the Constitution, any city containing a population of more than 2,000 inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state. The city of Tulsa adopted its charter on July 3, 1908, and the same was approved by the Governor on January 5, 1909. The charter relative to levying special assessments for local improvement purposes provides in part as follows:

"The cost of any such improvement assessed against any property together with all cost and reasonable expenses in collecting the same, including reasonable attorney's fee when incurred, shall be secured by a lien upon such property superior to all other liens, claims, or titles, except city, county and state taxes."

It will be observed that under the constitutional and charter provisions referred to, the city of Tulsa, upon adoption of its charter, was given general power to levy special assessments on property benefited by local improvements to be secured by lien thereon. We observe further that there was no exemption of property owned by a municipal subdivision of the state from such assessment. We hold that, in the absence of an exemption from such assessments, such property was subject to the levy. County Com'rs El Paso Co. v. Colorado Springs, 66 Colo. 111, 180 P. 301; McLean Co. v. Bloomington, 106 Ill. 209; Edwards & Walsh Construction Co. v. Jasper Co., 117 Iowa, 365, 90 N. W. 1006; City of St. John v. Bd. of Com'rs of Stafford Co., 111 Kan. 128, 205 P. 1033; Board of Com'rs of Franklin Co. v. City of Ottawa, 49 Kan. 747, 31 P. 788; Ricker v. Helena, 68 Mont. 350, 218 P. 1049.

See Board of Commissioners of Franklin County v. City of Ottawa, supra, for extended discussion which is of special value here.

The fact that the property of a county is exempt from taxation by the laws of the state does not exempt the same from a special assessment levy for improvement purposes. Board of Com'rs of Franklin County v. City of Ottawa, supra; City of St. John v. Board of Commissioners of Stafford County, supra.

Although there are authorities to the contrary, we adhere to the rule that a general constitutional or statutory provision exempting such property from general taxation does not include an exemption from special assessment levies for improvement purposes.

It therefore follows that the property herein involved was not exempt from the levy of the special assessment herein considered. The question then arises, Does property belonging to the county become impressed with a lien securing such special assessment levies? This question appears to have been before the courts on many occasions. It has been held that where the law has not specifically exempted publicly owned property from a levy or assessment for improvement purposes, the same was subject thereto, but in cases where the property was used for public purposes the courts have announced the rule almost universally that a lien did not attach to the specific property, or at least that the property itself was not subject to forced sale for payment thereof. In Board of Com'rs of Franklin County v. City of Ottawa, supra, the court said:

"The serious difficulty in this case is as to the manner of collecting the special assessment. We held in the case of Board of Com'rs of Stafford Co. v. First Nat. Bank of Stafford (Kan.) 30 P. 22 (recently decided), that, as the statute makes special provision for the collection of taxes they are not a debt in the ordinary sense of the term, and consequently an action will not lie for their recovery. We have no inclination to change that ruling. A courthouse cannot be sold or disposed of under tax proceedings or at forced sale for special assessments or taxes levied upon the ground thereof. Such grounds are for the uses and purposes of the public, and are essential to the administration of the executive and judicial duties of the county and state, and therefore are not subject to sale for taxes, or upon judgments rendered against a county. Perhaps it ought to be assumed·

when a special assessment is made in accordance with the provisions of the statute for the opening or improvement of a public street, that the officials of the county would allow and provide for the payment of the same without any action or other legal proceedings being necessary."

In such case the courts have generally entertained the right of the holder of the assessment certificates or bonds to maintain an action against the municipality and recover judgment for the amount of the assessment, but denying the right of forced sale of the property, and thus in effect denying the existence of a lien, on the grounds of public policy. The court said further in Board of Com'rs of Franklin County v. City of Ottawa, supra:

"It is presumed that the sovereign or state will do no wrong. If a county, however, refuses to pay the special assessments or taxes legally levied against its property, as such property, on account of the public uses to which it is applied, cannot be sold at a tax or other forced sale, there is no impropriety, after the claim is disallowed, in permitting the district court, on appeal, to adjust the amount thereof. The judgment can then be paid as other judgments against a county. Paragraph 1618, Gen. St. 1889. Such rule, it seems to us, will be beneficial to all concerned, will work no hardship upon any one, and permit the streets and sidewalks around public grounds to be improved and repaired as the statute prescribes, and in an equitable manner. Cooley, Tax'n, 572, 573; Hassan v. City of Rochester, 67 N. Y. 528; McLean County v. Bloomington, 106 Ill. 209; Adams Co. v. City of Quincy, 130 Ill. 566, 22 N. E. 624."

The Ninth Legislature of this state, recognizing the justness of the rule that publicly owned property should be compelled to pay its just proportion of necessary improvements, and further recognizing the hardship which would likely be imposed upon a municipality in such case if it were compelled to be subjected to a judgment for the amount thereof, provided by section 20 of said chapter 173, S. L. 1923, the manner and method for the payment of such assessments. The effect of this law was to require the holder of the assessment certificates or bonds to rely exclusively upon such method of payment, and it has been held by this court in construing the 1923 Act that a personal judgment may not be had against a municipality for the unpaid assessment. City of Drumright v. Exchange National Co., 164 Okla. 158, 23 P. (2d) 213; Independent School District No. 39, of Creek County et al. v. Exchange National Co., 164 Okla. 176, 23 P. (2d) 210.

It is apparent from the enactment of this section of the 1923 Laws that the Legislature recognized that public property was not exempt from special assessment for improvement purposes, and that publicly owned property used for a public purpose could not be sold to satisfy the same, and thus provided a statutory method for the payment of such assessment in such cases. Such provisions of the law do not change the existing law which did not then exempt such property from such assessments, nor do we think it was intended to attempt to require the municipalities of this state to levy a tax within its general fund for the payment of special assessments against property other than property used for public purposes.

The law was evidently designed to prevent municipalities from being subject to judgments which they would have otherwise been subjected to had the Legislature not provided a specific and exclusive method of paying the assessments.

Having seen that publicly owned property is not exempt from special assessments for improvement purposes, and that such property has at all times been subject to the same rules as privately owned property in that regard, save and except that it could not be sold for satisfaction thereof on the grounds of public policy, we now consider whether or not publicly owned property which is not used for a public purpose has not at all times been and is subject to the lien provided by the special assessment laws. We find substantial authorities for the rule that property which belongs to a sovereign, and its municipal subdivisions, which is not used for public or governmental purposes, may be and is subject to the same rules of law provided for the forced sale thereof for the payment of such assessments as is privately owned property.

In City St. Improvement Co. v. Regents of University of California, 96 P. 801, the Supreme Court of California, in considering the manner of enforcing the collection of special assessments levied against property owned by the State University, which property was not used for public, or school purposes, applied thereto the general law of that state relating to the sale of privately owned property in payment of such assessments.

In the case of Auditor General v. Mackin-

non Boiler & Machine Co., 165 N. W. 771, the Supreme Court of Michigan held:

"Tax Law, sec. 7 (How. Ann. St. 1912, sec. 1775), declares that all property belonging to the state of Michigan shall be exempt from taxation. Vacant real estate owned by the regents of the University of Michigan was sought to be sold for the payment of special assessments for local improvements. Held, that though the exemption included not only general taxation, but protected property used for governmental purposes from liability for assessment for public improvements, it did not extend to property belonging to a governmental agency, but not used for such purpose."

Although the Supreme Court of that state had already adopted the rule that a general provision of law exempting publicly owned property from taxation included an exemption from special assessments where the property was used for public purposes, it therein held that publicly owned property not used for public purposes was not exempt, upon the theory that the considerations present in the cases where the property is used for public purposes do not apply where the property is not so used, and therefore the last referred to c'ass of property is subject to the special assessment law the same as other property.

The reason in those cases appears to us sound. Publicly owned property should be made to bear its just proportionate share of the expense of public improvements benefiting the property itself. The reason for not treating such publicly owned property the same as privately owned property has been either by virtue of statutory or constitutional inhibition, or that upon the grounds of public policy, property used for public purposes should not be sold for the payment thereof, and thus we gather that if it were not for such statutory or constitional inhibition, or such consideration of public policy, no distinction would have been made between that and privately owned property. The reason for the rule does not apply where the property involved is not being used, and has not been dedicated for public purposes, or unless specifically governed by statute.

In the instant case the property involved belonged to Tulsa county when the special assessments were levied. The property was subject to such special assessments. The property had been acquired by the county under a system of tax procedure which forced upon the county the ownership thereof. The record clearly shows that at the time the property was sold by the county to the plaintiff here, it was not and had never been dedicated to public use, and was in fact not used for public purposes, otherwise a different procedure would have been followed in conveying the same to the plaintiff. The status of the ownership of such property in the county was not of such a nature as to invoke the rule of public policy, which would have prevented the forced sale thereof for the collection of the special assessments the same as privately owned property, nor is there statutory or constitutional inhibition against the same, and we hold that in such cases the lien provided in the city charter and ordinances attached to the property for such purposes the same as attached to the property belonging to private persons.

The city ordinances under which the special paving tax bills here were created contain the following provision:

"That the assessments hereby levied against each of the above-described lots or parcels of land shall bear interest at the rate of seven (7%) per cent. per annum, and both principal and interest are hereby declared to be a debt against the owner of the land, and a lien upon such lot and parcels of land prior to any other lien except the lien for state, county or city taxes, from this date."

Plaintiff urges that such ordinances providing that the assessments shall be a debt against the owner of the land are unconstitutional as violating the prohibition against taking property without compensation. The effect of the ordinance provisions declaring the assessments to be a debt against the owner of the land is immaterial here, for the reason that such provisions are not sought to be invoked in this case.

If such provisions are ineffective and violative of constitutional provisions in this regard, we know of no reason why the other provisions of the ordinances would not be valid and effective, and no reasons or authorities on the point have been given us by the plaintiff.

The lien having attached to the property here involved, and it being admitted that it is unsatisfied and unpaid, we find no error in the judgment of the trial court in favor of the defendants, and the same is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.