**PHILLIPS PETROLEUM COMPANY,**
a corporation, Appellant,

v.

**OKLAHOMA TAX COMMISSION,**
Appellee.

No. 47935.

Supreme Court of Oklahoma.

Oct. 28, 1975.

Rehearing Denied Dec. 9, 1975.

Lloyd G. Minter, C. J. Roberts, Bartlesville, Edward J. Fauss, Galen E. Ward, Oklahoma City, for appellant.

Lester D. Hoyt, Stanley J. Alexander, Clyde E. Fosdyke, Oklahoma Tax Commission, Oklahoma City, for appellee.

BARNES, Justice:

Appellant, Phillips Petroleum Company, is the owner and/or operator of several oil and gas leases in Osage County, Oklahoma. It seeks, by this action, to recover certain gross-production taxes paid on oil and/or gas produced during the month of May, 1971, from said leases located in Osage County, Oklahoma.

In 1971, the Oklahoma Legislature raised the gross-production tax from 5% to 7%. Appellant paid the additional 2% tax under protest and filed its petition for refund of the extra 2% tax, representing the increased rate, in the District Court of Oklahoma County. The District Court rendered a judgment in favor of Appellee, Oklahoma Tax Commission.

Appellant contends that by Act of 1940 (54 Stat. 168) Congress limited the authorization of the State of Oklahoma to levy and collect gross-production taxes on land in Osage County, Oklahoma, to a rate not to exceed 5%, which was the rate existing

at the time of the passage of the Act of 1940. The said Act provided:

"That the State of Oklahoma is authorized from and after the passage of this act to levy and collect a gross-production tax, not to exceed the existing rate, upon all oil and gas produced in Osage County, Oklahoma, except as herein otherwise provided, and all taxes so collected shall be paid and distributed, and shall be in lieu of· all other State and County taxes levied upon the production of oil and gas as provided by the laws of Oklahoma. The gross-production tax on the royalty interests of the Osage Indians shall be at the rate levied by said State but in no event to exceed 5 per centum and said tax shall be paid by the Secretary of the Interior, through the proper officers of the Osage Agency, to the State of Oklahoma from the amount received by the Osage Indians from the production of oil and gas to be distributed in like manner as gross-production tax under the laws of said State   *   *   *."

The sole question we are confronted with is whether or not the State of Oklahoma is authorized by this Act to collect from Appellant a gross-production tax on oil and gas produced in Osage County at a rate in excess of 5%.

In order to answer this question, it is necessary to review the history of congressional authorization of gross-production tax in Osage County.

Article I, Section 8, Clause 3, of the Constitution of the United States provides that Congress shall have the power to regulate commerce with the Indian Tribes. It is admitted by Appellee that the nature of congressional power in Indian matters is paramount and plenary. But they do not concede that State or local taxation of property, other than Indians, is an interference with this congressional power. Appellee contends that when the lands of Indians transfer to non-Indians, they become subject to State taxation. It will not be necessary to consider this contention unless we find that the Act of Congress in question limits the gross-production tax on Appellant to 5%.

In the Osage Act of 1921 (Public No. 360, 66th Congress), 41 Stat. 1249, 1250, Congress authorized the State of Oklahoma to levy and collect tax on oil and gas production in Osage County, Oklahoma, without condition of limitation. This Act also imposed a surtax of 1% on all Osage royalties for the benefit of the Road and Bridge Fund of Osage County. The result was that the Osage Indians paid 1% more tax than the oil companies producing in Osage County.

The Oklahoma Legislature raised the rate of the gross-production tax from 3% to 5% in 1935. Congress, in 1940, amended its prior authorization so as to impose certain limitations on the rate at which Oklahoma could levy and collect taxes on production in Osage County, Oklahoma (54 Stat. 168, supra). Legislative history indicates the purpose and object for this amendment was to relieve the Osage Tribe of this extra tax of 1% on their Tribal royalties (see Report to Elmer Thomas No. 1377, 76th Congress, 3rd Session), and in apparent answer to their complaint that they or Congress had not consented to the increase of gross-production taxes from 3% to 5% and their request that the congressional authorization for gross-production tax paid on their royalty share be reduced to 3%. See letter from Harold L. Ickes, Secretary of Interior, to the Honorable Will Rogers, Chairman, Commission on Indian Affairs (Report to Elmer Thomas No. 1377, supra). Although the final version of the Bill (54 Stat. 168, supra) set the maximum amount that could be levied against the Osage Indians' royalty share at 5%, rather than 3%, it did do away with the 1% surtax and set a maximum amount that could be charged to Osage Indians on their production.

This brings us to Appellant's contention that the 1940 Act also set a limit of 5% gross-production tax on their production in Osage County. In view of the history set out above, and a careful reading of the language of the statute, we do not agree with Appellant's contention. While the phrase "not to exceed the existing rate," standing alone, might appear to be ambiguous, when you read it in view of the legislative history and the language limiting the amount of gross-production tax on the royalty interest of Osage Indians to 5%, it is apparent that the Legislature meant the oil and gas producers were to pay gross-production taxes at the "existing rate" just like anyone else, with the exception of Osage Indians.

Appellant further contends that if there is any ambiguity in a tax law, it should be resolved in favor of the taxpayer. That rule does not apply here where the statute is claimed to exempt property from taxation. See *Dairy Queen of Oklahoma v. Oklahoma Tax Commission,* 205 Okl. 473, 238 P.2d 800 (1952); *Magnolia Petroleum Co. v. Oklahoma Tax Commission,* 326 P.2d 821 (Okl.1958); and *Forston v. Heisler,* 363 P.2d 949 (Okl.1961), where the rule is set out that a tax exemption statute is to be strictly construed against exemption. Applying this rule of construction, as well as the rule that the whole instrument is to be considered in determining the meaning thereof, it is apparent that Appellant's claimed exemption is untenable. There is no logical reason given or suggested why Appellant, a producer is Osage County, Oklahoma, should pay a different gross-production tax than one in any other County.

Judgment of the trial court is affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.

LAVENDER, J., dissents.