**BAPTIST HEALTH CARE CORPORATION, an Oklahoma Charitable Tax–Exempt Corporation, Appellant,**

v.

**OKMULGEE COUNTY BOARD OF EQUALIZATION, and Nannye Talton, County Assessor of Okmulgee County, Oklahoma, Appellee.**

No. 65796.

Supreme Court of Oklahoma.

Feb. 9, 1988.

---

**3.** Id.

James H. Lockhart, George Miller, Jack S. Dawson, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, for appellant.

Gregory R. Stidham, Dist. Atty., Michael K. Henson, Asst., Okmulgee, for appellee.

James M. Sturdivant, Tulsa, for amicus curiae.

SIMMS, Justice:

Appeal by the Baptist Health Care Corporation from a judgment, following de novo hearing, which held the Okmulgee Baptist Village is subject to ad valorem taxation. The relevant facts are undisputed.

The appellant provides nine residential community centers for the elderly statewide. The Okmulgee Baptist Village is one such center. In December, 1984, the Okmulgee County Assessor placed the Okmulgee Baptist Village on the county ad valorem tax rolls. The Village appealed to the County Excise Board, which upheld the Assessor's actions. The Village then appealed that decision to the district court where de novo review was held.

The evidence presented to the district court is, in large part, undisputed and uncontested. Okmulgee Baptist Village accepted its first resident in late 1984. The Village was built and operated through contributions from the Baptist General Convention of Oklahoma and individual members of the various Baptist congregations.

Appellant is a not-for-profit, tax-exempt corporation and operates the Village as part of its statewide ministry for the elderly. Additional testimony was presented which showed that the center is open to all, regardless of religious affiliation, race, or ability to pay. While most residents pay some rent, the revenues received do not compensate for expenses incurred in operation and the center operates at a loss. Annual contributions from various Baptist congregations are used to pay the difference.

## I.

The facts of this case are virtually identical to the facts and circumstances in *Glass v. Oklahoma Methodist Home for the Aged*, Okl., 502 P.2d 1268 (1972). The issues raised are equally similar. In *Glass*, this Court addressed the issue of whether an institution like the Okmulgee Baptist Village could claim a constitutional tax exemption as property being "used exclusively for religious and charitable purposes" when rent was collected from the residents. See, Okla. Const. Art. 10, § 6. There, as in this case, the evidence was clear that revenues from rent fell far short of meeting the operational costs of the facility, and that income from charitable donations provided nearly all of the funds for operating and maintaining the facility. In addition, the evidence in this case, as in *Glass*, makes it abundantly clear that "the overall purposes and practices of [the Okmulgee Baptist Village are] charitable in nature ..." Supra, at 1274. Following *stare decisis*, we can only conclude that the District Court of Okmulgee County erred in finding that the

Okmulgee Baptist Village was subject to ad valorem taxation.

## II.

■ Prior to placing the Okmulgee Baptist Village on the ad valorem tax rolls, the Assessor requested an opinion from the district attorney asking whether the Village was subject to taxation. The district attorney responded that the Village was subject to such tax, relying on his interpretation of 68 O.S. 1981, § 2405(h) and (i).[1] The appellants argue that this reliance is misplaced because that statute places unconstitutional limitations on the broad tax exemption created in our constitution, Art. 10, § 6.[2]

We are not persuaded that § 2405 places unconstitutional limitations upon the constitutional exemption at issue here. This question, too, is controlled by our opinion in *Glass v. Oklahoma Methodist Home for the Aged,* supra.

In *Glass,* this Court stated that contributions from outside sources cannot be considered as "income" when determining whether the institution is truly non-profit. Clearly, the facts of this case mandate the same result. The facts show that the contributions from church members provide the primary means of support for the Village. Rent receipts constitute an inconsequential revenue source when compared to the basic operational budget which appears to be met to a large degree through the benevolence of the Baptist General Convention of Oklahoma and the various Baptist congregations. While the evidence did show that the staff and administrator in charge of the Village are paid salaries, this does not come within the statutory prohibition that no income shall "inure to the benefit of any private stockholder". Section 2405(h) does not disqualify the Village from exemption here. Similarly, § 2405(i) cannot act to disqualify them from exemption because the facts show that the Village paid no rent to any private individual or corporation.

■ We do not believe that § 2405 places *limitations* on the constitutionally granted tax exemption. Rather, we are of the opinion that this statute simply adds definition to the phrase "property used exclusively for religious and charitable purposes". Okla. Const. Art. 10, § 6. Property which produces income for private profit, or which is not available to all regardless of ability to pay, or which itself is income property, cannot be property which is used "exclusively" for religious or charitable purpose. See, e.g., *London Square Village, Inc. v. Okla. County Equalization and Excise Board,* Okl., 559 P.2d 1224 (1976).

This interpretation of 68 O.S.Supp.1987, § 2405, is also in harmony with our opinion in *Glass,* supra. In that case, we examined the "income" at issue together with a seven part test adopted from the Supreme Court of Oregon in *Oregon Methodist Home Inc. v. Horn,* 226 Or. 298, 360 P.2d 293 (1961), and concluded that the Oklahoma Methodist Home for the Aged was

---

1. The relevant provision of 68 O.S. 1981, § 2405 (now 68 O.S.Supp.1987, § 2405, states:
   "The following property shall be exempt from taxation:

   \*    \*    \*    \*    \*    \*

   (g) All property used exclusively and directly for fraternal or religious purposes within this state.
   (h) All property of any charitable institution organized or chartered under the laws of this state as a nonprofit or charitable institution, provided the net income from such property is used exclusively within this state for charitable purposes and no part of such income inures to the benefit of any private stockholder, and provided further that its facilities are available to any person regardless of his ability to pay.

   (i) All property used exclusively and directly for charitable purposes within his state, provided the charity using said property does not pay any rent or remuneration to the owner thereof, and its facilities are open to any person regardless of his ability to pay."

2. Article 10, § 6, of the Constitution of The State of Oklahoma states:
   "All property used for free public libraries, free museums, public cemetaries, property used exclusively for nonprofit schools and colleges, and *all property used exclusively for religious and charitable purposes, ...,* shall be exempt from taxation until otherwise provided by law." (emphasis added)

properly entitled to the same constitutional exemption at issue here. The facts from this case satisfy those same tests.[3] Accordingly, we hold that the district court erred when it failed to direct the Okmulgee County Assessor to remove the Okmulgee Baptist Village from the Okmulgee County ad valorem tax roles.

The cause is Reversed and Remanded to the District Court of Okmulgee County with directions to enter judgment accordingly for the appellant.

REVERSED AND REMANDED.

HARGRAVE, V.C.J., and LAVENDER, SIMMS, OPALA and WILSON, JJ., concur.

DOOLIN, C.J., KAUGER, SUMMERS, JJ., concur by reason of stare decisis.

HODGES, J., not voting.

3. See, *Oregon Methodist Homes, Inc. v. Horn*, 226 Or. 298, 360 P.2d 293, 298–303 (1961), wherein the following seven tests are applied:
    1. Whether rent receipts are applied to upkeep, maintenance and equipment of the institution or are otherwise applied.
    2. Whether [residents] receive the same treatment, regardless of their ability to pay.
    3. Whether the facilities are open to all, regardless of race, creed, color, religion or ability to pay.

    4. Whether charges are made to all patients and, if made, are lesser charges made to the poor or are any charges made to the indigent.
    5. Whether there is a charitable trust fund created by benevolent and charitably minded persons for the needy or are donations made for the use of such persons.
    6. Whether the institution operates without a profit or private advantage to its founders and officials in charge.
    7. whether the articles or by-laws of the corporation make provision for the disposition of surplus assets upon dissolution.