AUTUMN HOUSE, London Square Village Apartments and Cherokee Terrace Apartments, Appellants,

v.

STATE of Oklahoma, ex rel., the OKLA-HOMA TAX COMMISSION, Appellee.

No. 69093.

Supreme Court of Oklahoma.

July 9, 1991.

Richard G. Ingham, William H. Whitehill, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for appellants.

Joe Mark Elkouri, Gen. Counsel, Marjorie L. Welch, Okl. Tax Com'n, Oklahoma City, for appellee.

OPALA, Chief Justice.

The dispositive issue is whether the appellants are entitled to sales tax exemptions upon the use of natural gas and electricity in the common areas of their apartment complexes for the non-exclusive benefit of their resident tenants. We answer in the negative.

THE ANATOMY OF LITIGATION

Appellants [taxpayers] Congregate Housing for the Elderly and Handicapped of Central Oklahoma, Inc. d/b/a Autumn House, London Square Village Apartments, Inc., and Cherokee Terrace Apartments, an Oklahoma limited partnership, own and operate their respective apartment complexes and provide residential housing for their tenants. In two of the complexes the residential units are separately metered and tenants are billed for their use of natural gas and electricity. In the third complex the tenants' residential units are also separately metered, but the complex is billed on a one-bill system for total electricity use and the tenants are charged for any overage above a specified minimum.[1] The common areas of each complex are metered and billed to the complex as a whole and not separately to the tenants.[2] Among the

three taxpayers, the *common areas include office areas, coin-operated laundry facilities, maintenance rooms, recreation rooms, vending machines, a kitchen, a dining room, a clinic, a beauty shop, a thrift shop, and an assembly room.*

During 1985 and 1986 the taxpayers individually *filed for sales tax refunds,* under the general exemption provision in 68 O.S. 1981 § 1357(G),[3] *for the previous year's use of natural gas and electricity in the common areas of their apartment complexes.*[4] The Oklahoma Tax Commission [Commission] denied the refund requests. The taxpayers then agreed to consolidate their claims for a hearing before the administrative law judge of the Commission, while retaining the right to have an individual determination. Following the administrative judge's recommendation, the Commission denied the refund requests. The taxpayers appealed, and the Court of Appeals reversed and remanded with instructions to grant the refunds.

We grant certiorari to clarify misperceptions about the meaning of the statutory language, "sold exclusively for residential use," contained in the general exemption provision of § 1357(G).

I

THE APPELLATE COURT'S DECISION

█ The taxpayers argued, and the Court of Appeals agreed, that our decision

1. The apartment complex owned and operated by Cherokee Terrace Apartments [Cherokee], an Oklahoma limited partnership, is somewhat unique. The United States Government originally built, owned, and operated the apartment complex. Because of this unique feature, Cherokee owns and maintains the electrical system, including the meters, the lines, and the poles.

2. One question not before this court is whether residential tenants of an apartment complex would be entitled to sales tax refunds where the common areas were separately metered and billed to the residential tenants and not to the complex as a whole.

3. The pertinent terms of 68 O.S. 1981 § 1357(G) are:
   "There are hereby specifically exempted from the tax levied by this article:
   *       *       *       *       *       *
   (G) Sale of natural or artificial gas and electricity when *sold exclusively for residential use*

after December 31, 1980. * * *" (Emphasis added.)
Section 1357(G) is now codified in 68 O.S.Supp. 1990 § 1357(F).

4. The applicable tax rate is found in 68 O.S.1981 § 1354(B), which provides in part:
   "There is hereby levied upon all sales, not otherwise exempted in this article, an excise tax of two percent (2%) of the gross receipts or gross proceeds of each sale of the following:
   *       *       *       *       *       *
   (B) Natural or artificial gas, electricity, ice, steam or any other utility or public service, except water and those specifically exempt under Section 1357 of this Code; * * *"
See 68 O.S.Supp.1990 § 1354 for the latest version of the statute, which now provides an excise tax of 4.5 percent of the gross receipts or gross proceeds of each sale.

in *Immanuel Baptist Church v. Glass*[5] provides the applicable test for determining whether the taxpayers' claims for sales tax refunds fall within the exemption of § 1357(G). *Immanuel Baptist Church* addressed the question whether a parsonage was exempt from taxation under Art. 10, § 6 of the Oklahoma Constitution.[6] There we reasoned that in determining whether property was "used exclusively" within the meaning of the constitutional language, one must look at the purpose to which the property was "dedicated and devoted." We concluded that the use to which the property was put, minimally, must be "incidental to and reasonably necessary for the accomplishment" of the exempt purpose. We also noted that a purpose entails a significantly broad concept, denoting an end or object that is held in the mind towards which actions or efforts are directed. Accordingly, we held that, under Art. 10, § 6, the parsonage was properly exempt from taxation.

Focusing on our decision in *Immanuel Baptist Church*, the appellate court found the terms "used exclusively" sufficiently analogous to the terms "sold exclusively," justifying the application of the "dedicated and devoted" test to the instant case. Applying this standard, the appellate court found that the taxpayers' use of utilities in the common areas of the apartment complexes was dedicated and devoted to the statutorily exempt purpose. The court also found that the use of the common areas

met the "incidental to and reasonably necessary for the accomplishment" of the exempt purpose condition. The appellate court concluded that the taxpayers' utility expenditures are exempt under § 1357(G) and that the sales tax refund should be granted.[7] We disagree.

## II

## "PURPOSE" DISTINGUISHED FROM "USE"

■ *Immanuel Baptist Church* deals with the construction of a constitutional provision that exempts from taxation property used exclusively for religious purposes. Our decision there is rested not on a construction of the language "used exclusively" in the abstract but, rather, in the context of the constitutionally exempt purpose. Both phrases, "used exclusively" and "for religious ... purposes,"[8] must be construed as a whole.[9] Neither phrase is reducible to an independent quantum of meaning, readily parsed from one context and reassembled into another. In sum, *Immanuel Baptist Church* stands for the rule that the permissible tax exemption on the use of property is necessarily limited by the context of the constitutionally exempt purpose.[10]

■ That the taxpayers' use of utilities in the common areas of the apartment complexes is dedicated and devoted to a resi-

---

**5.** Okl., 497 P.2d 757 [1972].

**6.** The terms of Art. 10, § 6, Okl. Const., provide in part:
"All property used for free public libraries, free museums, public cemeteries, property used exclusively for nonprofit schools and colleges, and all property used *exclusively for religious and charitable purposes*, ... shall be exempt from taxation until otherwise provided by law." [Emphasis added.]

**7.** The Court of Appeals apparently limited the application of § 1357(G) to those apartment complexes which serve the elderly, disabled or economically disadvantaged, concluding that the clear purpose of § 1357(G) was to exempt all such residential use.

**8.** *Supra* note 5.

**9.** *See Meads v. Human*, 84 Okl. 82, 202 P. 797, 798 [1921], where this court stated:

"In considering a legislative enactment it is not safe to base a construction upon a particular word or phrase, for the language of legislative enactments is not always precise and accurate, and, besides, one portion may frequently be designed to extend, qualify, or limit another so that the meaning of one portion of a statute may depend upon the effect of another. Hence, it is an established rule in the exposition of *statutes* that the *intention of the lawgiver* is to be deduced from a view of the whole and of every part of a statute taken and compared together."

**10.** *See Baptist Health Care v. Bd. of Equal.*, Okl., 750 P.2d 127, 128 [1988]; *London Square Village v. Okl. Cty. E. & E. Bd.*, Okl., 559 P.2d 1224, 1226 [1977]; *Glass v. Oklahoma Methodist Home for the Aged, Inc.*, Okl., 502 P.2d 1268, 1274 [1972].

dential purpose is certain. Equally true is that the common areas are incidental to and reasonably necessary for the accomplishment of such a purpose. Indeed, to suggest otherwise would clearly controvert reality. Tenants of apartment complexes need laundry facilities, hallways and garages, as equally as the residents of single-family houses. But this does not mean that the taxpayers' use of natural gas and electricity in the common areas of their apartment complexes for residential purposes is tantamount to a residential use.

■ A use is not a purpose. As commonly defined, the term "use" denotes the application or employment of something for some purpose.[11] Where a purpose is the end or object towards which actions or efforts are directed, a use is employed in the actions or efforts directed towards a purpose. A use is both substantially distinct from and significantly more narrow than a purpose. Accordingly, where § 1357(G) specifically delineates the scope of the permissible exemption *for residential use,* we see no reason to extend the meaning of the term to encompass the more inclusive notion of a purpose. Indeed, we have consistently stated that where the statutory language is plain and unambiguous, there is no room for judicial construction beyond the scope of the plain and unambiguous language.[12] That the

above is correct is further buttressed by contrasting the language in § 1357(G) with the language in Article 10, § 6.[13] The appellate court's reliance on *Immanuel Baptist Church* is clearly misplaced.

## III

## CONSTRUCTION OF § 1357(G)

Although the taxpayers' use of utilities in the common areas of their apartment complexes is, ultimately, for the benefit of their residential tenants, *such a use is clearly not exclusive. The taxpayers are in commercial enterprises.* Each maintains office areas, maintenance rooms, and other business related facilities as part of the common areas of their business operations. Even the coin-operated laundry facilities provide each apartment complex a certain remuneration, which is allocated to the general funds of the apartment complexes for maintenance and upkeep.

■ Our decisions have consistently held that tax exemption statutes must be strictly construed against granting exemptions.[14] Where, as here, the legislative language is specifically limited in its application, this court's statutory construction is necessarily constrained by the enactment's purview.[15] Section 1357(G) is specifically limited to tax exemptions upon the use of

---

**11.** Commonly accepted meanings of terms are often dispositive. *See Producers Oil Co. v. Gore,* Okl., 610 P.2d 772, 774 [1980]; *Wiley v. Travelers Ins.,* Okl., 534 P.2d 1293, 1296 [1974]; *Sport O'Kings Farms v. Thomas,* Okl.App., 797 P.2d 1016, 1017 [1990]. As this court stated in *Palmer Oil Corp. v. Phillips Petroleum Co.,* 204 Okl. 543, 231 P.2d 997, 1011 [1951]:

"[I]n [the] absence of a different meaning, apparent or obvious from the statute or definitely indicated thereby, the word should be construed in accordance with [its] ... commonly accepted meaning."

**12.** *Forston v. Heisler,* Okl., 363 P.2d 949, 951 [1961]; *Darby v. Oklahoma Tax Commission,* 201 Okl. 159, 202 P.2d 978, 981 [1949]; *Protest of Hyde,* 188 Okl. 413, 110 P.2d 292, 293 [1941].

**13.** Art. 10, § 6, Okl. Const., *supra* note 6, specifically employs the term "purpose," and § 1357(G) the term "use," *supra* note 3. Given that both terms are codified in tax exemption provisions, it seems clear that the legislature

intended different results between the two provisions. Had the legislature intended the scope of permissible tax exemptions in § 1357(G) to extend to the scope of permissible tax exemptions in Art. 10, § 6, it could easily have used the term "purpose" rather than the term "use." The legislature's choice of one term over the other for codification seems dispositive.

**14.** *McDonald's Corp. v. Oklahoma Tax Commission,* Okl., 563 P.2d 635, 641 [1977]; *Bert Smith Mach. Co. v. Oklahoma Tax Commission,* Okl., 563 P.2d 641, 643 [1977]; *Phillips Petroleum Co., v. Oklahoma Tax Commission,* Okl., 542 P.2d 1303, 1305 [1975]; *Dairy Queen v. Oklahoma Tax Commission,* 205 Okl. 473, 238 P.2d 800, 801–802 [1951].

**15.** *Mindemann v. Independent School Dist. No. 6 of Caddo County,* Okl., 771 P.2d 996, 1001 [1989]; *Valley Vista Dev. Corp. v. City of Broken Arrow,* Okl., 766 P.2d 344, 349 [1988]; *Northwest Datsun v. Oklahoma Motor Vehicle Comm'r,* Okl., 736 P.2d 516, 519 [1987].

natural gas and electricity that is sold *exclusively* for residential use. Even if the dual use of the taxpayers' common areas and the remuneration from the coin-operated laundry facilities could be characterized as *de minimis*, our result would be the same. The legislature's use of the term *"exclusively"* is both *plain* and *unambiguous*. It must be given a mandatory meaning.[16] In the face of such stark language, we cannot find the taxpayers' use of natural gas and electricity to have been exclusively for residential use.[17] The taxpayers' claims for sales tax refund must be denied.

CERTIORARI IS GRANTED; THE COURT OF APPEALS' OPINION IS VACATED AND THE OKLAHOMA TAX COMMISSION'S ORDER IS AFFIRMED.

LAVENDER, DOOLIN, HARGRAVE and ALMA WILSON, JJ., concur.

HODGES, V.C.J., and SIMMS and KAUGER, JJ., dissent.

SUMMERS, J., not participating.

---

**16.** *Mindemann v. Independent School Dist. No. 6 of Caddo County, supra* note 15.

**17.** We find unavailing the Court of Appeals' view that eleemosynary motives operate as limiting factors on § 1357(G). There is nothing in the language of the statute to suggest this limitation.