Dear Executive Director Hare:
¶ 0 This office has received your request for an Attorney General Opinion in which you ask the following question:
 When a racetrack at which fair meets are conducted operates as an inter-track wagering facility by accepting wagers on simulcast races from another racetrack licensed by the Oklahoma Horse Racing Commission or by accepting wagers on out-of-state races having a gross purse of $50,000 or more, and such wagers are accepted when no fair meet is being conducted by the racetrack, is that racetrack entitled to the tax exemption afforded those conducting a fair meet, under the provisions of Title 3A O.S.Supp. 1995, § 208.2[3A-208.2]?
 I. The "Fair Meet" Tax Exemption
¶ 1 Under the provisions of the Oklahoma Horse Racing Act, 3AO.S. 1991 and Supp. 1995, §§ 200-208.11, "[a]ny fair association organized pursuant to the provisions of Title 2 of the Oklahoma Statutes for Agricultural Fair Corporations, the Free Oklahoma State Fair, Free District Fairs, and Agricultural and Industrial Expositions and Fairs or any existing county, district, or state fair as of January 1, 1983, may apply to the Commission for one race meeting each year to be held within the boundaries of the county where the fair association is located." 3A O.S.Supp.1995, § 208.2[3A-208.2](A). Racing meetings conducted by a fair association may not exceed sixteen (16) days during a twenty-eight (28) consecutive day period. Id. Race meetings held by fair associations are commonly referred to as "fair meets."
¶ 2 Under the general statutory scheme a tax equal to one-ninth (1/9) of the percentage withheld from the amount wagered is imposed, and the organization licensee must remit such amount to the Oklahoma Tax Commission. 3A O.S.Supp. 1995, § 205.6[3A-205.6](B). Fair associations, however, are exempt from this tax burden, as the percentage withheld from monies wagered at race meets conducted by fair associations are divided between the fair association and purses for participating horses. 3A O.S.Supp.1995, § 208.2[3A-208.2](B).
¶ 3 The statute authorizing fair associations to conduct fair meets exempts race meetings conducted under the statute from the taxes normally imposed upon wagers placed during race meetings at an organization licensee's racetrack. In pertinent part, the statute granting the tax exemption reads as follows:
 A race meeting conducted pursuant to the provisions of this section shall be conducted in such a manner that all profits shall accrue to the fair association.
 B. Each organization licensee that, pursuant to this section, holds a race meeting at which the pari-mutuel system of wagering is conducted shall retain the following amounts from the monies wagered:
 1. On win, place, and show wagers, an amount equal to eighteen percent (18%) shall be retained and distributed as follows:
 a. two-thirds (2/3) of the eighteen percent (18%) to the organization licensee, and
 b. one-third (1/3) of the eighteen percent (18%) to purses for participating horses;
 2. On daily double, quinella, and exacta wagers, an amount equal to twenty percent (20%) shall be retained and distributed as follows:
 a. seven-tenths (7/10) of the twenty percent (20%) to the organization licensee, and
 b. three-tenths (3/10) of the twenty percent (20%) to purses for participating horses;
 3. On pick six wagers, an amount equal to twenty-five percent (25%) shall be retained and distributed as follows:
 a. three-fifths (3/5) of the twenty-five percent (25%) to the organization licensee, and
 b. two-fifths (2/5) of the twenty-five percent (25%) to purses for participating horses.
3A O.S.Supp. 1995, § 208.2[3A-208.2] (emphasis added).
¶ 4 In each instance provided for in the above-quoted provisions of Section 208.2, the percentage withheld from wagers is split between the racetrack — the organization licensee — and purses for participating horses. No tax is imposed, and no monies are remitted to the Oklahoma Tax Commission.
 II. Inapplicability Of The "Fair Meet" Tax Exemption To Inter-Track, Simulcast Wagering Held When No Fair Meets Are Being Conducted
¶ 5 Recent legislation permits organization licensees who have been licensed to conduct fair meets to accept wagers on the results of out-of-state races having a gross purse of Fifty Thousand Dollars ($50,000.00) or more, either when the licensee is conducting a race meet, or when the licensee is accepting pari-mutuel wagers on races run at any racetrack licensed by the Commission. The Commission's power to authorize such wagering is set forth in the newly-amended Section 205.7 of Title 3A, which in pertinent part reads:
 The Oklahoma Horse Racing Commission may authorize an organization licensee during the period it is conducting a race meeting or accepting pari-mutuel wagers on races run at any racetrack licensed by the Commission, to accept wagers on the results of out-of-state races having a gross purse of Fifty Thousand Dollars ($50,000.00) or more. Any organization licensee may be exempt from the minimum gross purse requirements of this section if authorized by the Oklahoma Horse Racing Commission.
3A O.S.Supp. 1995, § 205.7[3A-205.7](A) (emphasis added).
¶ 6 Addressing itself to inter-track wagering, the Oklahoma Legislature at 3A O.S.Supp. 1995, § 205.7a[3A-205.7a](A), provides as follows:
 Any race run at any racetrack licensed by the Oklahoma Horse Racing Commission may be televised to another racetrack licensed by the Oklahoma Horse Racing Commission or may be televised out of state. Pari-mutuel wagering may be permitted on such race at any other licensed track within this state, or at any racetrack or other entity in another state or country. Money wagered on such races may be placed in separate or common pools as determined by rules of the Oklahoma Horse Racing Commission. A written application to televise a race shall contain the details of such race, its agreements and contracts,
and shall be submitted to the Oklahoma Horse Racing Commission for its approval prior to the racing event. Such agreement shall comply with all applicable laws of the United States and the laws of this state. The proceeds of the agreement shall be distributed in the same manner as money wagered pursuant to the provisions of paragraph 1 of subsection B, paragraph 1 of subsection D and paragraph 1 of subsection E of Section 205.6 of Title 3A of the Oklahoma Statutes and Section 208.2 of Title 3A of the Oklahoma Statutes.
3A O.S.Supp. 1995, § 205.7a[3A-205.7a](A) (emphasis added).
¶ 7 Under this provision, racetracks licensed by the Commission may not only televise out-of-state, but may also televise races run "at any other licensed track within this state," under a written agreement between the tracks involved. Under this statute the proceeds of those agreements are to be distributed in the same manner as money wagered either under the general provisions of Section 205.6 or the provisions dealing with fair meets, Section 208.2.
¶ 8 The question you pose is whether the tax exemption provided to "fair meet" licensees is applicable not only to races run during fair meets, but also to wagers on races simulcast to the fair meet licensees when no fair meets are being conducted.
¶ 9 In examining this question, we begin by recognizing the rules of statutory construction that require that tax exemption statutes be strictly construed against an exemption. E.g.,McDonald's Corp. v. Oklahoma Tax Commission, 563 P.2d 635, 641
(Okla. 1977) (statutes exempting property from taxation are to be strictly construed against exemptions) and Magnolia PetroleumCo. v. Oklahoma Tax Commission, 326 P.2d 821, 825 (Okla. 1958) (tax exempt statutes are strictly construed against person asserting exemption). In Phillips Petroleum Co. v. Oklahoma TaxCommission, 542 P.2d 1303, 1305 (Okla. 1975), the Oklahoma Supreme Court had occasion to comment on the interplay between the general rule of statutory construction that tax laws should be resolved to the favor of the taxpayer, and the rule of construction that tax exemption statutes are to be strictly construed against the person asserting the exemption. The Court held that the rule of construction that an ambiguity in the tax law should be resolved in the favor of the taxpayer does not
apply where a statute is claimed to exempt property from taxation, because tax exempt statutes are to be construed against exemption. Id.
¶ 10 In applying this rule in Autumn House v. State ex rel.Tax Commission, 814 P.2d 1036, 1039 (Okla. 1991), the Oklahoma Supreme Court held that if legislative language is specifically limited in application, the court's construction of a tax exemption statute is necessarily constrained by the enactment's purview.
¶ 11 A reading of the exempting statute, 3A O.S.Supp. 1995, §208.2[3A-208.2], makes it clear that the exemption is limited to race meetings conducted under that section. That section only permits fair associations to conduct a fair meet — one annual race meeting of no more than sixteen days. The last sentence of subsection A of Section 208.2 provides that "[a] race meetingconducted pursuant to the provisions of this section shall be conducted in such a manner that all profits shall accrue to the fair association." Subsection B then provides for the distribution of funds, distributing funds between the fair association and purses for participating horses, and excludes any distribution to the Tax Commission. Subsection B makes it clear that this tax-exempt distribution is limited to races held under that section:
 Each organization licensee that, pursuant to this section, holds a race meeting at which the pari-mutuel system of wagering is conducted shall retain the following amounts from the monies wagered:
3A O.S.Supp. 1995, § 208.2[3A-208.2](B) (emphasis added).
¶ 12 Because the language establishing the conditions under which a tax-exempt distribution will take place specifically limits the tax-exempt distribution to races held under the section, we conclude that the tax exemption only applies to wagers placed during a fair meet. Thus, if inter-track wagering takes place during a "fair meet," the distribution of funds from such wagers are exempt. On the other hand, wagers on inter-track races conducted by such licensees, when no fair meets are being conducted at the licensee's racetrack, are not exempt from taxation.
¶ 13 In coming to this conclusion, we note that 3A O.S.Supp.1995, § 205.7a[3A-205.7a], the statute which permits inter-track, pari-mutuel simulcast wagering, indicates that the proceeds from agreements between racetracks are to be divided pursuant to the provisions of the general distribution statute, Section 205.6, which includes the tax, and Section 208.2, which has a tax exemption. The mention of the tax exemption section, Section 208.2, in that statute, does not alter the result here. That tax-exemption statute had to be placed in the inter-track wagering statute to cover situations in which inter-track wagering takes place during a fair meet.
¶ 14 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The provisions of 3A O.S.Supp. 1995, § 208.2[3A-208.2], which exempt wagers placed on horse races conducted during a fair meet held by a fair association or like entity, does not exempt from taxation inter-track, simulcast wagering placed at such facility when no fair meet is being conducted.
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL