## MISSOURI STATE LIFE INS. CO. v. BOARD OF COUNTY COM'RS OF GARVIN COUNTY.

No. 23906.   Feb. 5, 1935.

Rehearing Denied June 18, 1935.

Roger L. Stephens, Fred L. Hoyt, R. E. Bowling, and F. X. Schlosser. for plaintiff in error.

Clarence Bowie, County Atty., for defendant in error.

PER CURIAM. The parties will be referred to herein as they appeared in the court below, the plaintiff in error as plaintiff, and the defendant in error as defendant.

This action was instituted to recover from the defendant, Garvin county, moneys collected by its county treasurer as special assessments, interest, and penalties levied and assessed against the lands of one William George Paul, a Chickasaw Indian, whose lands were not at the time taxable, and not legally liable for such special assessments, on account of a provision in the Atoka Agreement which rendered such lands nontaxable as long as the title remained in the allottee, but not to exceed 21 years from the date of the patent. See Board of County Commissioners v. Dennis, 140 Okla. 204, 282 P. 457. These special assessments arose and were levied in connection with a drainage district organized in said county, said district being known as the "Rush Creek Drainage District Number One." The owner failing or refusing to pay the assessment or levy against the lands, the county treasurer of said county sold the lands at the November 3, 1925, tax sale, and issued his tax sales certificate therefor, which reads as follows:

"County Treasurer's Certificate of Tax Sale.                                    Original
"Sale for 1925 Tax.                    No. 3361
"State of Oklahoma, Garvin County, ss.
"I. Joe S. Bottoms, treasurer of the coun-

ty of Garvin, state of Oklahoma, do hereby certify that the following described real estate in said county and state, to wit:

| | Sec. or Lot | Twp. | Rng. or Blk. |
|---|---|---|---|
| SE NE & SW NE & N2 NE SE & SE NE SE & NW NE SE & N2 NW SE | 13 | 3 | 1W |

| | Amount |
|---|---|
| Rush Creek Drainage Dist. No. 1 | 1042.30 |
| Certificate fee | .25 |
| Total | 1042.55 |

"Was on the 3 day of November, A. D. 1925, duly sold by me in the manner provided by law for the delinquent taxes for the year 1925, and including interest and penalty thereon and the cost allowed by law, to D. W. Hogan, for the sum of One Thousand Forty Two & 50/100 Dollars he being the highest and best bidder for the same. (This certificate being also a tax receipt)

"And I further certify that unless redemption is made of said real estate in the manner provided by law, the said D. W. Hogan assigns will be entitled to a deed therefor on and after the 3 day of Nov. A. D. 1927, on the surrender of this certificate.

"In witness whereof, I have hereunto set my hand this 3 day of Nov. A. D. 1925.

"By    I. G.          Deputy.          Joe S. Bottoms, County Treasurer."

D. W. Hogan became the purchaser of the certificate, but later assigned same to the plaintiff.

A part of the sum represented in the purchase price of said certificate was for delinquent assessments and interest due thereon; the balance ($207.16) represented "penalties" collected by the county treasurer.

The case was tried upon an agreed statement of facts; paragraph 7 of said agreed statement reads as follows:

"It is further stipulated and agreed that the supposed penalties collected by the county treasurer of Garvin county at the time of the issuance of his said certificate, and the supposed penalties collected by the said county treasurer at the time of his indorsement of additional amounts collected by him, aggregate the sum of $207.16; that said penalties have never been paid to any one and are now in the hands of the county treasurer, of Garvin county, state of Oklahoma; that $156.03 of said amount has been in the hands of said county treasurer since the 3rd day of November, 1925, and $51.13 of said amount has been in the hands of said county treasurer since the 4th day of October, 1926; that not only has the said county treasurer retained all of the penalties collected by him upon the sale of the lands, or otherwise, but that he has likewise collected and retained all of the penalties upon all delinquent assessments paid by owners of land within said drainage district, and the total amount of such penalties, collected and retained by said county treasurer to this date, aggregate the sum of $5,247.07."

From the above-quoted portion of the agreed statement of facts, it would appear that the county treasurer did not have on hand the principal amounts paid for the assessments and interest by the purchaser of the tax sales certificate, but had on hand only the penalties. The drainage statutes require that the county treasurer pay the proceeds of the sale (assessments and interest) to the bondholders, and this, it might be inferred from the agreed statement of facts, he had done. But if the county had this money on hand, it would be immaterial; plaintiff would not be entitled to it under section 12749, O. S. 1931. Furthermore, this assessment was not an obligation of the county, but rather the drainage district, and the county officials were agents of the drainage district under the drainage statute, and when the county treasurer paid the money in to the bondholders he had performed his full duty under the statute, and the county was not liable to the holder of a void tax sales certificate for such assessments.

Plaintiff contends that it is entitled to compel the county to make good all money so paid in by the assignor of the tax sales certificate, including the amount of the special assessment, as well as the penalties, even though the county treasurer had paid it to the bondholders. The county treasurer contends that the county was merely acting as agent for the drainage district and assumed no liability; that the county was under no obligation to make good assessments against nontaxable lands on a private improvement project, as drainage districts, and such is the law.

It is admitted that the county did retain the penalties against this particular land, which the plaintiff, or its assignor, paid, but the county attorney contends that this money is retained by the county for compensation for the expense and trouble the county is put to by the holders of the bonds. The trial court held that the county was not liable for these assessments and the interest, because the county did not have on hand such money; but the court held

that the county was liable for the penalties. While plaintiff obtained a small judgment for the penalties, it brings this appeal here against such judgment, seeking to recover not only the penalties, but the principal amount of the assessment and interest so paid in to the county.

Counsel for plaintiff in error say in their brief:

"There are but two propositions involved in this appeal, and they are:

"(1)    Whether or not sec. 13027, O. S. 1931, adopted section 12749, O. S. 1931, thereby making this section directly applicable to sales for delinquent drainage assessments, and,

"(2)    (If proposition No. 1 be answered in the negative) whether or not a drainage assessment is a tax within the meaning of section 12749, O. S. 1931."

In considering proposition No. 1, it should be observed that section 13027, supra, is a part of a comprehensive act or code of laws relating to the creation of drainage districts and providing a method of levying assessments against the lands benefited by the drain ditch, bonds to be issued by the district, and provides a scheme for the collection of assessments, interest, penalties, etc., and this particular section fixes a lien against the lands for the benefits so assessed against each tract, and provides the same shall be collected "in the same manner as state, county and school taxes upon real estate and on personal property are collected. The said lien shall become delinquent on the date other taxes become delinquent and when so delinquent shall bear the same interest and penalties as in case of other delinquent taxes and be enforced as provided under the general revenue laws of this state.

It is clear that no particular section of the revenue laws of the state was enacted into the drainage act by the above language, hence section 12749, O. S. 1931, was not adopted into the drainage law. There is no positive adoption of any of the revenue laws of the state in said section, or anywhere else in the Drainage Act; the act merely says the collection of the assessments, interest, and penalties "shall be * * * in the same manner as state, county, and school taxes" are collected. The reference in the Drainage Act to the general revenue laws of the state was merely to afford a way to enforce the assessments. Section 12749, supra,

is a part of the revenue laws of the state, and reads:

"When lands or lots which have heretofore been or shall hereafter be sold, and tax sale certificate or tax deed issued by the county treasurer therefor, on which lands or lots no tax was due, or where said sale was, or is otherwise illegal, or a portion of such tax covered improvements which were not on the premises at the time same were assessed, the county shall save the purchaser or his assigns harmless by refunding and paying to him or them the original purchase money paid thereon together with subsequent payments with interest from date of payment at six (6) per cent. per annum. No action for such refund shall be commenced after the expiration of five (5) years from the time a tax deed might have been applied for, had the sale been valid."

Certainly it was not the intention of the Legislature to make the county responsible to bondholders for assessments illegally made against lands not liable for assessments. The county could not be held liable for such assessments never collected. It is only a stakeholder in such cases, and furnishes its good offices as agents of the drainage district.

The bond of this drainage district contains a provision required by the statute (sec. 13035) as follows:

"This bond is based upon, and constitutes a lien upon and is **payable solely out of the proceeds of the special assessment** for benefits theretofore legally levied on the lands to be benefited, **and out of** 'no other fund whatsoever.'"

Section 13031 also provides:

"All costs, **except** construction, and collection of delinquent assessments or installments, * * * shall be paid out of the county treasury and be refunded to the county out of the first money received on assessments or on sales of bonds issued under the provisions of this chapter."

This section, by inference, denies liability of the county for construction costs or costs of collecting delinquent assessments, and even the other costs sustained by the county on account of the creation of the district must be returned to the county out of the first money received on assessments or bond sales. There is no liability on the county to make good void assessments in improvement districts. The rule of caveat emptor applies in this case, as in all other similar cases. In Marsh v. The Board of Super-

visors of Fulton County, 10 Wall. 676, 19 L. Ed. 1040, Mr. Justice Fields states:

"That the plaintiff was an innocent purchaser of the bonds without notice of their invalidity," cannot effect the liability of the county in such cases.

The authority to contract must exist before any protection as an innocent purchaser can be claimed by the holder. See Allen v. Board of County Commissioners, 28 Okla. 773, 116 P. 175; 15 C. J. 541; Wiegel v. Pulaski County, 61 Ark. 74, 32 S. W. 116.

In such cases there can be no estoppel against the county. Osborne v. King County, 76 Wash. 277, 136 P. 138; Town of Red Fork v. Gantt-Baker Co., 130 Okla. 175, 266 P. 444.

Proposition No. 1 must be answered in the negative.

Proposition No. 2, whether a drainage assessment is a tax within the meaning of section 12749, supra, will likewise have to be answered in the negative.

A special assessment for local improvements is not a tax in the general accepta tion of the term. It is an assessment. The Constitution so terms it. Section 7, art, 10, of the Constitution reads:

"The Legislature may authorize county and municipal corporations to levy and collect 'assessments' for local improvements upon property benefited thereby."

In the case of City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, in the 11th paragraph of the syllabus, the court said:

"An assessment for local improvements as authorized by section 7 of article 10 of the Constitution is not a tax in the general acceptation of the term."

In the case of Knight v. Clinkscales, 51 Okla. 508, 152 P. 133, this court, in holding that a local assessment is not a "tax" within the meaning of a covenant of warranty against taxes, says:

"Counsel cannot contend that the specific covenant against taxes includes special assessments of the kind involved. That proposition is too well settled to require citation of authorities, but we may be permitted to mention a few."

In the case of Sanders v. Brown, 65 Ark. 498, 47 S. W. 461, the third syllabus paragraph reads:

"A local assessment is not a tax within an exception in a covenant of warranty of the taxes."

See, also: Nitsche v. State Sec. Bank, 69 Okla. 37, 170 P. 234; Patchell v. Garvin, 66 Okla. 184, 168 P. 423.

In the case of Illinois Central Railway Company v. City of Decatur, 147 U. S. 190, 37 L. Ed. 132, the court says:

"Between taxes, or general taxes as they are sometimes called by way of distinction, which are the exaction placed upon the citizen for the support of the government, paid to the state as a state, the consideration of which is protection by the state, and special taxes or special assessments which are imposed upon property within a limited area for the payment for a local improvement, supposed to enhance the value of all property within that area, there is a broad and clear line of distinction, although both of them are properly called taxes, and the proceedings for their collection are by the same officers and by substantially similar methods. Taxes proper, or general taxes, proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all. * * *

"On the other hand, special assessments or special taxes proceed upon the theory that when a local improvement enhances the value of neighboring property, that property should pay for the improvement."

No cross-petition in error having been filed by the defendant in error, the judgment of the trial court should be affirmed, and the same is accordingly done.

The Supreme Court acknowledges the aid of Attorneys Chas. R. Freeman, James S. Arnote, and Chas. R. Hudson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Freeman and approved by Mr. Arnote and Mr. Hudson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.