Dear Senator Riley,
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. What property located within a Drainage District is subject to a drainage assessment, as established in 82 O.S. 1971, § 414[82-414]? Does such property include buildings on leased lands located within a Drainage District? Is property that is exempt from ad valorem taxes also exempt from Drainage District assessments?
 2. May exemptions from drainage assessments be granted? If so, who has the authority to grant such an exemption?
 3. Is it the duty of the County Assessor's office to appraise or value all property located in a Drainage District so that a drainage assessment can be determined for the property pursuant to 82 O.S. 1971, § 414[82-414]?
 4. Does the County Budget Act, 19 O.S. 2001 Supp.2006, §§ 1401 — 1421, apply to Drainage Districts that were constructed by the Federal Government (82 O.S. 1971, § 414[82-414])? If so, in a Budget Board county (19 O.S. 2001, § 1407[19-1407]), is the Drainage District Commissioner required to submit the district's annual budget to the Budget Board for approval?
 I. BACKGROUND
Before responding to your questions, a review of the history of the Oklahoma State Drainage Act would be helpful. The Oklahoma State Drainage Act ("Drainage Act"), 82 O.S. 1971, §§ 281[82-281] — 447, first enacted in 1907, applied to "every drain, ditch, watercourse, canal, levee, or embankment, or other structure of whatever kind used or to be used in carrying surface or flood water off any lots or lands (or out of the soil or subsoil thereof) or for the prevention of the inundation of lots or lands by flood waters, situate[d] within this State, constructed under the provisions of this act, and to all bridges and other structures over and upon any such improvements." Id. § 281. This Act was repealed in 1972, as obsolete.[1] However, a savings statute allowed drainage districts already in existence to continue to operate under the repealed statute. 82 O.S. 2001, § 1085.16[82-1085.16].[2]
Your questions concern 82 O.S. 1971, § 414[82-414], which deals specifically with the process for creating a maintenance budget and levying assessments for repairs or cleaning within Drainage Districts. This section in pertinent part originally read:
 Said drainage commissioner shall return his estimate and assessment for repair or cleaning to the commissioners, who shall appoint a time for hearing the same and cause notice to be given as provided for in the construction of the drain, and when the commissioners have made the apportionment as they deem right and proper, they shall enter the same upon their records, and the county clerk shall place the same upon the tax books against the lands and crops, or rents and profits hereinbefore provided, to be collected as taxes.
1907-08 Laws ch. 30 art. 1, § 30, p. 313.
Section 414 was amended in 1951 to add the following:
 Provided, that in all counties wherein the Federal Government has constructed drains, ditches, dykes or levees for the purpose of flood control upon the assurance from the County Commissioners of such counties that such drains, ditches, dykes or levees will be maintained by the drainage district, it shall be the duty of the drainage commissioner to prepare a maintenance budget and submit the same to the commissioners at such time as is provided by law for the preparation and submission of the general county budget, setting out in such budget the necessary maintenance expense for the next year, such budget to include the cost of labor, material, machinery, supplies and salaries of all employees, including the salary of the drainage commissioner, and when such budget is approved or amended and approved by the commissioners, the property of such district shall be assessed therefor upon the same basis as other assessments against such districts are made, and the taxes therefor shall be and become a lien upon the property of such district and the same collected in the same manner as the general taxes of such counties are collected. Provided, further, that all assessments heretofore made in all counties where such Federal assurance for maintenance purposes has been given are hereby declared to be valid.
1951 Okla. Sess. Laws tit. 82 ch. 3, § 1. This section remained unchanged until its repeal in 1972.
Your questions can be grouped into two general areas. First, what property is included in the drainage district, and how is the assessment made and by whom? Second, what is the procedure for budgeting for maintenance and repairs in counties governed by the County Budget Board Act, 19 O.S. 2001 Supp.2006, §§ 1401 — 1421?
 II. Under The Drainage Act, Property Includes Only Land.
As part of your first question, you ask whether buildings on leased property were included in property of the drainage district for assessment purposes. The Drainage Act, written just after statehood when urban areas were not as prevalent as today, had as its purpose to prevent flooding oflots and lands. See 1907-08 Laws ch. 30 art. 1, § 1, p. 295 (codified as amended at 82 O.S. 1971, § 281[82-281]). Section 307 provides that the commissioners draw a plat to "distinctly show the boundary lines of eachlot or tract of land, and each road or railroad to be benefited and taxed thereby" and filed with the county clerk. Id. (emphasis added). Section 331 provides for the method for the original assessment of benefits. This section states that "the expense of such improvement shall be prorated proportionately to the whole acreage benefited." Id. (emphasis added). Furthermore, Section 338 describes liens for the assessments as "againstall lots and parcels of land, and all public or corporate roads and railroads . . . upon the lands and crops produced by the owner, or rents and profits due the owner, on crops produced on such lands assessed."Id. § 338 (emphasis added). Finally, Section 414 of the Drainage Act states that the assessments for repairs will be placed "upon the tax books against the lands and crops or rents and profits as hereinbefore provided to be collected as taxes." Id. § 414 (emphasis added).
Reading the Drainage Act as a whole, the intent of the legislature was to assess only the land. "The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute." City of Durant v.Cicio, 50 P.3d 218, 220 (Okla. 2002). Throughout the Drainage Act, the term "land" is used as opposed to "real property" or any other term that would indicate that all property would be included for assessment purposes. The terms "land" and "real property" are specifically defined in the Oklahoma Statutes. See 60 O.S. 2001, §§ 5-6[60-5-6]. Section 5 defines "real property" as:
Real or immovable property consists of:
 1. Land.
 2. That which is affixed to land.
 3. That which is incidental or appurtenant to land.
 4. That which is immovable by law.
Id. Section 6 defines "land" as "the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance." Id. These definitions have not changed since they were first enacted. "When the provisions of a statute assign one meaning to a term, its definition will apply in every other instance in which the same term is found anywhere else in the compilation." FraternalOrder of Police, Lodge 108 v. City of Ardmore, 44 P.3d 569, 573 (Okla. 2002). Furthermore, "[w]henever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase whenever it occurs, except where a contrary intention plainly appears." Oliver v. City of Tulsa, 654 P.2d 607, 611 (Okla. 1982).
The Tenth Circuit addressed this definition of "land" within the Drainage Act in Sinclair Refining Co. v. Burroughs, 133 F.2d 536 (10th Cir. 1943). In determining that a railroad right of way did not fall within the definition of land as used in the Drainage Act, the court pointed out that "[t]he terms `lands' and `real estate' as used in the Oklahoma statutes are not synonymous terms. . . . Having defined the terms `land' and `real property,' it must follow that when the law making body of the state uses one or the other of these terms, it uses them in the sense in which it had defined them." Id. at 539. Thus, asSinclair stated, "[the Legislature] used the term `land' and stopped there, and we may not by interpretation read into the law after the word `land,' `or any interest therein.'" Id.[3]
While some similar statutes have specifically defined the term land, such as in the act authorizing the formation of Conservancy Districts,[4]
the Drainage Act has not further defined this term. See 82 O.S. 1971, §§ 281[82-281] — 447. The definition of "land" in the Conservancy Act provides a clear intention to define the word "land" to include real property for the purposes of that statute. See 82 O.S. 2001, § 531[82-531]. However, the fact that the language used in the Drainage District Act was not changed at that time, or even later, indicates the Legislature did not intend to expand the language in the Drainage Act. This emphasis on the land may seem to be an anachronism in today's more urban environment.
However, the savings statute did not change the language of the Drainage Act. "It is presumed that the law-making body has expressed its intent in a statute and that it intended what it so expressed." Nealisv. Baird, 996 P.2d 438, 460 (Okla. 1999). Thus, as Sinclair said, we cannot read into the law what is not there. The Drainage Act states that only land is subject to assessment. Buildings, whether or not on leased land, are not subject to these assessments.
 III. All Land Within a Drainage District is Subject to Assessment Under 82 O.S. 1971, § 414[82-414] Based on the Benefit Received, Whether or not Subject to Ad Valorem Tax.
Your initial question concerns whether all property is subject to assessment within a Drainage District, including property exempt from ad valorem taxes. The relevant statute states that "[a]ll lands benefited by public drains, levees or improvements, shall be assessed in proportion to the benefits, for the construction thereof." 82 O.S. 1971, § 331[82-331] (emphasis added). However, first, an understanding of the difference between an assessment and a tax is necessary.
Generally, an assessment, as opposed to a tax, is based upon the benefit to the property.[5] The Oklahoma Supreme Court in Clark v.City of Weatherford, 288 P. 278 (Okla. 1929), addressed this difference, stating:
 Assessments have also very generally, if not always, been apportioned upon principles different from those adopted in "taxation," in the ordinary sense of that term; and any one can see, upon a moment's reflection, that the apportionment, to bear equally, and do substantial justice to all parties, must be made upon a different principle from that adopted in "taxation," so called.
Id. at 279 (quoting Jones v. Holzapfel, 68 P. 511, 514
(Okla. 1902)). The fact that the Drainage Act provides that the assessments are entered on the tax books as taxes is "merely to afford a way to enforce the assessments." Missouri State Life Ins. Co. v. Bd. ofCounty Comm'rs, 45 P.2d 1101, 1103 (Okla. 1935) (holding a special assessment is not a tax, so county could not refund money to purchaser at illegal tax sale).
 A. All Land Within a Drainage District isSubject to Assessment.
The Drainage Act did anticipate that some lands might not have been taxable when the original assessments were made for the Drainage District and spelled out the procedure for handling these non-taxable lands.[6]
However, this statute did not address, other than public lands, what property was not taxable for assessment purposes. Nevertheless, two Oklahoma Supreme Court cases, as well as two Attorney General Opinions, have addressed the inclusion of state-owned property, as well as charitable property in special improvement districts.
In City of Idabel ex rel. Woodroof v. School DistrictNo. Five, 434 P.2d 285 (Okla. 1967), the Oklahoma Supreme Court said that property owned by a school district was not exempt from special assessments, finding that "the law is settled that neither constitutional nor statutory provision exempting property from taxation serves to exempt property from the levy of special assessments for local improvements."Id. at 287. Woodroof cited a case from 1935 that held that "in the absence of an exemption from such assessments such property was subject to the levy. . . . [W]e adhere to the rule that a general constitutional or statutory provision exempting such property from general taxation does not include an exemption from special assessment levies for improvement purposes."Blythe v. City of Tulsa, 46 P.2d 310, 312 (Okla. 1935).
A 1967 Oklahoma Attorney General Opinion, citingBlythe, opined that lands owned by municipalities were not exempt from assessments under the Drainage Act and that the same logic could be used for charitable institutions. A.G. Opin. 67-459, at 3-4. The Attorney General Opinion stated that Article X, Section 6, of the Oklahoma Constitution,[7] which addresses exemptions of property from taxation, did not apply to assessments for local improvements, saying specifically "that the assessment involved at 82 O.S. 1961, § 414[82-414], is not a tax and is therefore not exempt under Article X, Section 6, of the Oklahoma Constitution."[8]Id. at 3.
A later Attorney General Opinion from 1982 specifically addressed assessment of church property. A.G. Opin. 82-142. This Opinion concerned whether "church property or property used for religious purposes" could be subject to a special assessment. Id.
at 281. The Attorney General stated that church property must be included in a special assessment "when such property is benefited by the improvement financed by the assessment." Id. 283. While this Opinion dealt with a special assessment under the authority of the Improvement District Act, 11 O.S. 1981, § 39-104[11-39-104],[9]
(id. at 282), the same logic would apply to the Drainage Act. As the court in Woodroof said, the fact that a property is exempted from taxation does not exempt it from a special assessment, unless, as the court inBlythe held, there is an express statutory exemption.See Woodroof, 434 P.2d at 287; Blythe, 46 P.2d at 312.
 B. Unlike Ad Valorem Taxes, a Drainage District Assessment Must be Based on the Benefit Received by the Property.
The Oklahoma Supreme Court has provided insight into appropriate methods that can be used for determining the amount of special assessments when the court addressed the constitutionality of fire protection districts and the levy of special assessments to finance the districts. Pub. Serv. Co. v. Nw. Rogers County FireProt. Dist., 675 P.2d 134 (Okla. 1984). In this case the court found that the "[d]istrict properly apportioned the total annual cost of fire protection by levying assessments against the benefited property according to the assessed value." Id. at 140. The court noted, however, that a variety of methods have been upheld by the court and could be used. Id. at 140 n. 35. In the sewer improvement act, the court noted that the act "provided for equalization of assessments [which was] necessary in the sewer improvement act because assessments made thereunder are based upon the theory that all property received equal benefit. Equalization is unnecessary in [a fire protection district] because benefit may be deemed proportional to assessed value."Id. at 141 (footnote omitted). The court went on to say that "[w]hether the entire cost of a local improvement is apportioned upon consideration of the particular benefit to the property or of the values of such property is a matter of legislative discretion, although subject to judicial review." Id. at 141-42. However, the court observed that basing the apportionment on the assessed value was acceptable for a fire improvement district, finding that:
 Since fire protection is not a physical improvement upon the land, which can be spread among properties according to some tangible benefit formula, an apportionment based on the assessed value is not impermissible. It is not at all impermissible for the legislature to found the assessment method on the principle that the more value a property has, the greater the benefit it receives from a fire protection project. The question in each instance is whether there is a rational nexus between a value-based assessment method and the amount of benefit. If the value-based assessment has a rational relationship to the question of the benefit conferred, it is not unconstitutional.
Id. at 142.
Section 331 of the Drainage Act provided the original method for assessment, stating that:
 No assessment shall be made for benefits to any land upon any other principle than that of such benefits accorded by reason of the construction of the improvement . . . and the expense of such improvement shall be prorated proportionately to the whole acreage benefited which it shall bear to the aggregate cost of such improvement in such drainage district.
Id. § 331 (emphasis added). The emphasized language here expressly contemplates that the original assessment be based not on the value, but on the size of the property.
The Drainage Act provides that in "counties wherein the Federal Government has constructed drains, ditches, dykes or levees for the purpose of flood control . . . the property of such district shall be assessed therefor upon the same basis as other assessments against such districts are made." 82 O.S. 1971, § 414[82-414]. The language here is not an authorization for making assessments based on the value of the property as assessed for ad valorem purposes, but for making assessments on the same basis as provided under the Drainage Act for other drainage assessments against land within the district. Section 413 of Title 82, which includes requirements for the repair or cleaning of drains, states that the drainage commissioner shall "examine the drain and report on oath an estimate of the amount of work required to repair or clean out said drain, and such sum, if found reasonable in amount by the commissioners, shall be divided pro rata, according to the originalassessments of benefits." Id.(emphasis added).
Notwithstanding this language, the language in Section 414 provides that the Commissioners shall make "the apportionment of the costs and expenses of such improvement or repair as they deem right and proper."Id. § 414. (emphasis added). This language may seem to provide some latitude to the Commissioners on how to determine the assessment. However, as the court in Public Service Co. said, a value-based assessment must have some kind of rational nexus to the benefit received. Pub. Serv. Co., 675 P.2d at 142. The court pointed out that assessments for a sewer district, unlike a fire protection district, are based upon the theory that all property received equal benefit. Id. at 141. While all property must be included in the assessments, the "right and proper" method must be a method that relates to the benefit received and not just the value of the property. Id. Thus, unless this "rational nexus" exists, the property cannot automatically be assessed within the drainage district using the same method as valuation of property for ad valorem tax purposes. In construing the statute in its entirety, it becomes clear that the intent was to assess the land based on the acreage benefited, not the value of the property. Thus, the "rational nexus" for basing the assessment on value of the property does not exist.
 IV. No Authority Exists in the Drainage Act to Grant Exemptions to Assessments.
The original assessment for drainage districts was prorated and based upon the benefit to all lands. 82 O.S. 1971, § 331[82-331]. As noted before, a statutory provision must exist to allow for exemptions.[10]
"As such corporations, counties, cities and towns, have no inherent power or authority, but possess, and can exercise, only those powers granted in express words or necessarily or fairly implied or incidental to the powers expressly granted." Shipp v. Se. Okla. Indus. Auth., 498 P.2d 1395,1398 (Okla. 1972) (declining to enjoin trustees from selling revenue bonds, as state may authorize a public trust be created for the purpose of performing its "authorized functions").
The Attorney General also dealt with this issue in rejecting the idea that a County Assessor could grant an exemption "if he or she feels it is in the best interests of the public." A.G. Opin. 03-23, at 129. The Opinion stated that "in Oklahoma it is a well-settled rule that statutes exempting property from taxation are strictly construed against exemptions." Id. at 131 (citing Bert Smith Road Mach. Co. v. Okla. TaxComm'n, 563 P.2d 641, 643 (Okla. 1977); McDonald's Corp. v. Okla. TaxComm'n, 563 P.2d 635, 641 (Okla. 1977); Phillips Petroleum Co. v. Okla.Tax Comm'n, 542 P.2d 1303, 1305 (Okla. 1975)). While this Attorney General Opinion concerned exemptions from taxes, the same logic would apply to exemptions from assessments. Without specific statutory authority, no one can grant exemptions to assessments and no provisions exist within the Drainage Act for doing so.
 V. The County Commissioners are Responsible for Assessing all Property Within the Drainage District.
You also ask whether the County Assessor must value all property located in a Drainage District, whether or not said property is exempt from ad valorem taxation. First, this question assumes that the County Assessor is responsible for valuing the property within a Drainage District for assessment purposes. However, a review of the statutes does not confirm this assumption. As previously noted in the section analyzing the method for assessing property,[11] assessments in a Drainage District are assessed based on the land and its pro rata size to the whole acreage within the District, not on the value of the property. It follows, therefore, that the valuation of the property by the County Assessor is not part of this procedure.
The question then becomes what role the Drainage Commissioner and the County Commissioners have in determining the assessments. According to the definitions in Section 283 of Title 82, any reference in the Drainage Act to "commissioners" means the "board of county commissioners. " Id.
Furthermore, the County Commissioners have "exclusive jurisdiction in all subsequent proceedings of the district, when organized" unless specifically provided otherwise within the Drainage Act. Id. § 282.
Section 413 of Title 82 provides that the commissioners shall divide "pro rata, according to the original assessments of benefits" the cost to repair or clean out existing drains. Id. Under Section 414 of Title 82, the Drainage Commissioner is responsible for providing to the County Commissioners his estimate and assessment for repairing or cleaning out the drains. Id. The County Commissioners then determine the time for a hearing on the Drainage Commissioner's estimates and assessments and give notice in the same manner as in the original construction. Id. This same section of Title 82 then provides that:
 [W]hen the commissioners have made the apportionment of the costs and expenses of such improvement or repair as they deem right and proper, they shall enter the same upon their records and the county clerk shall place the same upon the tax books against the lands and crops or rents and profits as hereinbefore provided to be collected as taxes.
Id. Thus, while the Drainage Commissioner provides the initial "estimate and assessment" of the repairs and maintenance costs, the County Commissioners have the ultimate responsibility for determining the assessment.
As our previous analysis concluded,[12] the assessment of property within a Drainage District is based not on the value of the real property as assessed by the County Assessor, but rather on the benefit to the land. Thus, valuation of the property by the County Assessor does not enter into the picture. The County Commissioners are the responsible parties for determining the "right and proper" assessments.
 VI. The County Budget Act Does Not Apply to DrainageDistricts.
You last ask whether the County Budget Act, 19 O.S. 2001 Supp.2006, §§ 1401 — 1421, applies to Drainage Districts that were constructed by the Federal Government under 82 O.S. 1971, § 414[82-414]; and if so, whether the Drainage District Commissioner under 19 O.S. 2001, § 1407[19-1407] is required to submit the Drainage District annual maintenance budget to the Budget Board for approval. Section 414 of the Drainage Act states that:
 Provided, that in all counties wherein the Federal Government has constructed drains, ditches, dykes or levees for the purpose of flood control upon the assurance from the County Commissioners of such counties that such drains, ditches, dykes or levees will be maintained by the drainage district, it shall be the duty of the drainage commissioner to prepare a maintenance budget and submit the same to the commissioners at such time as is provided by law for the preparation and submission of the general county budget, setting out in such budget the necessary maintenance expense for the next year, such budget to include the cost of labor, material, machinery, supplies and salaries of all employees, including the salary of the drainage commissioner.
Id.
Section 1403 of the County Budget Act states that "[t]his Act shall apply to any county which by resolution of the governing body elects to come under and comply with all its provisions and requirements." 19 O.S. 2001, § 1403[19-1403]. A county is defined as "any county government and all its agencies, instrumentalities, departments, offices, boards or commission, which by resolution of the governing body has elected to come under and comply with all of the provisions and requirements of this act[.]" Id. § 1404(7). Thus, the issue is whether the Drainage District is an agency, instrumentality, department, office, board or commission of the county.
The authority to establish a drainage district is contained in Section 282 of Title 82, which states, "[t]he commissioners of any county shall have power . . . to form one or more drainage or improvement districts under the provisions of this chapter." 82 O.S. 1971, § 282[82-282]. However, once formed, this district is "a separate, independent, and distinct entity from the county itself." Bd. of County Comm'rs v.Robertson, 130 P. 947, 949 (Okla. 1913), overruled on other grounds byOkla. City-Ada-Atoka Ry. Co. v. Parks, 78 P.2d 791 (Okla. 1938). The court in Robertson went on to say that:
 [A drainage district] is not brought into existence or created for the purpose of either county, township, or any other species of municipal government. It presents merely a voluntary or involuntary association of a number of people whose lands lie within a certain drainage belt under which certain improvements are made which increase the utility and value of the lands therein.
Id.[13] The court pointed out that while County Commissioners are the commissioners of the drainage district in Oklahoma, other states have selected different bodies to perform these duties. Id. at 950. Therefore, since a drainage district is a "separate, independent and distinct" entity from a county, as described in Robertson, it is not an agency, instrumentality, department, office, board or commission of the county and does not come under the County Budget Act. Id. at 949.
It is, therefore, the official Opinion of the Attorney General that:
 1. Title 82 O.S. 1971, § 414[82-414] provides for drainage assessment of only land and crops or rents and profits. The terms "land" and "real property" are each defined in 60 O.S. 2001, §§ 5[60-5], 6 and no other definitions are provided within the Drainage Act. Because the Drainage Act states that only land and crops, or rent and profits on those crops, are subject to assessments and liens, buildings, whether or not on leased land, are not subject to assessments or liens. Sinclair Refining Co. v. Burroughs, 133 F.2d 536, 539 (10th Cir. 1943).
 2. All property located within a Drainage District is subject to a drainage assessment as established in 82 O.S. 1971, § 414[82-414]. An exemption from property tax does not automatically exempt the property from a special assessment without an express statutory exemption. City of Idabel ex rel. Woodroof v. Sch. Dist. No. Five, 434 P.2d 285, 287 (Okla. 1967); Blythe v. City of Tulsa, 46 P.2d 310, 312 (Okla. 1935).
 3. Assessment of property under 82 O.S. 1971, § 414[ 82-414] must be based on the benefit received by that property and not on the value of the property as assessed for ad valorem taxes, unless a "rational nexus" can be shown between this valuation and the benefit received. Pub. Serv. Co. v. Nw. Rogers County Fire Prot. Dist., 675 P.2d 134, 142 (Okla. 1984). However, the Drainage Act, when construed in its entirety, makes it clear that the intent was to assess property based on the expense, "prorated proportionately to the whole acreage benefited." 82 O.S. 1971, § 331[82-331]. Thus, property must be assessed based upon the area of the land as it relates to the whole Drainage District.
 4. Drainage Districts have no inherent authority to grant exemptions to drainage assessments under 82 O.S. 1971, § 414[82-414]. Shipp v. Se. Okla. Indus. Auth., 498 P.2d 1395, 1398 (Okla. 1972); A.G. Opin. 03-23, at 131.
 5. The County Commissioners have the sole responsibility for making the assessments on property within a Drainage District. 82 O.S. 1971, §§ 282[82-282], 414. Because the assessments are based on the land only, as it relates proportionately to the entire district, the County Assessor's valuation of the real property cannot be the basis for the assessment. 82 O.S. 1971, §§ 331[82-331], 413-414; Pub. Serv. Co. v. Nw. Rogers County Fire Prot. Dist., 675 P.2d 134, 141 (Okla. 1984).
 6. A Drainage District is a separate, independent and distinct entity and is not an agency, instrumentality, department, office, board or commission of the county within the definition of a county under 19 O.S. 2001, § 1404[19-1404](7); therefore, it does not come under the County Budget Act, 19 O.S. 2001 Supp.2006, §§ 1401 — 1421. Bd. of County Comm'rs v. Robertson, 130 P. 947, 949 (Okla. 1913).
W.A. DREW EDMONDSON Attorney General of Oklahoma
PATRICIA A. PODOLEC Assistant Attorney General
[1] The title in Senate Bill 386, repealing the relevant section of the Oklahoma Drainage Act says, "AN ACT RELATING TO WATER AND WATER RIGHTS; REPEALING OBSOLETE PROVISIONS; REPEALING 82 O.S. 1971, §§ . . .281 THROUGH . . . 447." 1972 Okla. Sess. Laws ch. 133.
[2] This savings statute states in pertinent part: "All districts heretofore formed pursuant to the provisions of Sections 281 through 447, inclusive, in Title 82 of the Oklahoma Statutes, shall have the right to continue to operate pursuant to said statutes." Id.
[3] This interpretation by the Tenth Circuit was later cited favorably by the Oklahoma Supreme Court inMeriwether v. Gulf Oil Corp., 298 P.2d 758, 759 (Okla. 1956) (quoting Sinclair Refining Co., 133 F.2d at 539).
[4] The Conservancy Act of Oklahoma provides that:
 Wherever the terms "land" or "property" are used in this act, they shall, unless otherwise specified, be held to mean real property, as the words "real property" are used in and defined by the laws of the State of Oklahoma, and shall embrace all railroads, tramroads, roads, electric railroads, street and interurban railroads, streets and street improvements, telephone, telegraph, and transmission lines, gas, sewerage and water systems, pipelines and rights-of-way of public service corporations, and all other real property whether public or private.
82 O.S. 2001, § 531[82-531] (emphasis added).
[5] One treatise defines a special assessment as "a charge imposed on particular real property for a local public improvement of direct benefit to that property." 14 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 38.01, at 12 (Thomson et al. eds. 3d ed. 2002).
[6] Concerning the handling of non-taxable lands, the Drainage Act provided that:
 [I]n case any lands shall not be taxable in any proposed improvement district, the commissioners shall have the power either to prorate the amount of assessments among the owners of such other lands in such improvement district subject to taxation, or pay the assessment on such non-taxable lands out of the county funds . . .; provided further, that all public lands belonging to the State of Oklahoma, which may be situated within the limits of any authorized drainage district, shall be subject to assessment for benefits and allowances for damages the same as lands owned by private persons. . . .
82 O.S. 1971, § 338[82-338].
[7] This section of the Oklahoma Constitution states, in pertinent part:
 [A]ll property used for free public libraries, free museums, public cemeteries, property used exclusively for nonprofit schools and colleges, and all property used exclusively for religious and charitable purposes . . .; all property of this state, and of counties and of municipalities of this state; . . . and all growing crops, shall be exempt from taxation[.]
OKLA. CONST. art. X, § 6(A).
[8] See also Missouri State Life Ins. Co., 45 P.2d at 1104 (holding, "A special assessment for local improvements is not a tax in the general acceptation of the term. It is an assessment.").
[9] When Attorney General Opinion 82-142 was written the pertinent statutory language said: "The district shall include, for the purpose of assessment, all the property which the governing body determines is benefited by the improvement or improvements, including property utilized for public, governmental, burial, charitable or religious purposes." 11 O.S. 1981, § 39-104[11-39-104]. However, in 2003, this section was amended to exclude "property of any religious organization used primarily for religious purposes." See 2003 Okla. Sess. Laws ch. 454, § 2. No such change was made to the Drainage Act to exempt property used for religious purposes.
[10] See discussion above in Part III(A).
[11] See discussion above in Part III(B).
[12] See discussion above in Part III(B).
[13] See also A.G. Opin. 84-149, that compared emergency medical districts to drainage districts, stating that drainage districts are "not organized for political or governmental purposes. They are created solely for the purpose of promoting the welfare and benefit of the inhabitants of such District." Id. at 276.